# William H. Bayless *v.* Orne, Bybee *et al.*

Chartered privileges cannot be taken away by any collateral proceeding, nor in any other mode than by a direct proceeding through the usual forms of *scire facias,* or information in the nature of a *quo warranto,* regularly prosecuted in a court of law.

It is well settled, that a court of chancery, as such, has not jurisdiction or power over corporate bodies for the purpose of restraining their operations, or winding up their concerns. In New York this power is conferred by express statute.

A court of equity has jurisdiction, at the instance of the stockholders, to call the directors of a monied or other joint stock corporation to account for any abuse of trust, or waste, or misapplication of the funds of the company; but in such cases the jurisdiction is over the directors personally, and not over the corporation—the directors being trustees.

A court of equity will not grant an injunction, at the instance of the stockholders, against the president and cashier of a bank, restraining them from the exercise of their official functions for an alledged malfeasance in office. To grant such restraint would be equivalent to a removal from office. The right of removing the officers of a private corporation belongs exclusively to the corporation itself. A court of equity has no jurisdiction or power for such purpose.

The bill in this case states, that James W. Sumner and John L. Brown, stockholders in the Hernando Rail Road and Banking Company, did, on the 24th of March, 1840, exhibit to the court a bill of complaint against the plaintiffs in this suit, which also prayed that the plaintiffs in this suit, who were directors in the said Hernando Rail Road and Banking Company, might be injoined and restrained from exercising any of the powers and functions of directors, leaving the same to be conducted by the other officers of the bank; or that the court would appoint a receiver to take charge of the assets, &c. of said bank, as might be deemed best. That said bill was presented to Judge Adams, who, on the 24th of March, 1840, issued an injunction whereby complainants were restrained from acting as directors; that in consequence the control of the bank fell into the hands of Edward Orne, president, and Joseph N. Bybee, cashier; that a short time after said Bybee, cashier, thus held control, he surrendered the effects of the bank to Culbertson B. Payne, sheriff of De Soto county, and delivered

14*

Wm. H. Bayloss v. Orne, Bybee *et al.*

him the key of the bank, which contained all the assets, and that he afterwards received them back from said sheriff as his agent or deputy; that said cashier, Bybee, without authority or reason, sold an iron chest and all the furniture of the bank to one Gideon E. Hallett, for the sum the complainants were informed of forty or fifty dollars, which was inadequate to the value of the property; that said Orne and Bybee did then go on to take up certificates of deposit, by handing out the notes of the bank which had been deposited by their favorites, in disregard of an [order of the board, which required that the notes of said bank, so fast as they were received, should be cancelled or destroyed—and that they do not know how far this was carried, because they were not permitted to examine the books of the bank; that said Bybee and Orne gave up and released or discharged a deed of trust executed to the bank by Felix Lewis, to secure a debt due the bank, before the debt was paid, and took said Lewis' note for a large balance due without any security, out of mere favoritism; that said Bybee suffered three or four thousand dollars in the notes of Richard Orne and —— ——, his brother-in-law, to be checked out of the bank and delivered to Edward Orne; that said Bybee was a trustee in a deed of trust, executed by John Murray to secure a debt of two or three thousand dollars, due by said Murray to the bank, and that he has neglected to close said trust, and has renewed said debt in violation of an order of the board—and complainants farther allege, that they cannot produce the orders for the same, because said Bybee and Orne will not allow them to see the books; that by a negotiation with the New York Banking Company, the Hernando Bank had on deposit in New Orleans, in the Commercial Bank of that city, between twenty and thirty thousand dollars, which by an order of the directors was set apart as a fund to take up checks which the Hernando Bank had over drawn upon New York, and also to pay for cotton advanced upon that in February last, while cashier Bybee was in New York, and while E. E. Hallett, cashier pro tem. was ill in bed, Edward Orne placed one Whitney, his private clerk and nephew, in the bank; that while there, without the knowledge or consent of the directors, either said Orne or said Whitney took from the bank between ten and fifteen thousand dollars of notes, payable at the Commercial Bank of New Orleans,

which had been signed in blank by cashier Bybee before his departure, and were filled up and signed by said Orne as president, and afterwards sealed up the same and placed the package in the bank vault, indorsed "a special deposit of Edward Orne; that the first intimation which the board of directors had of this matter was on the passage of a resolution directing the cashier pro tem. to pay off a protested check, when he informed them that the fund had been used by Mr. Orne; that said Orne was absent at this time; that said package was broken open; that said Whitney forthwith took the money of said package to New Orleans and had it redeemed there, and that thereafter said Orne never made his appearance at the board nor furnished any explanation of his conduct; that he left Hernando and did not return until after complainants were enjoined, and then assumed his post and functions as president of said bank; that twelve or eighteen months since the Hernando Bank made an arrangement with the New York Banking Company for a loan of $200,000, to be advanced in instalments of $50,000 every ninety days, the first to fall due in the fall of 1838, which was to have been met by the Hernando Bank by shipping cotton to the agent of said New York Banking Company in New Orleans; that to secure said New York Banking Company for said loan, the bonds of the said Hernando Bank for $200,000, and the mortgages on real estate, executed by the stockholders to the bank to secure their stock, to the amount of $200,000, were also assigned over to John Delafield, president of said New York Banking Company.

Complainants state that said Delafield, president, failed and refused to comply with his agreement aforesaid, and only advanced two instalments of fifty thousand dollars each; also, they believe said Delafield to be a partner in the Boston Land Company, and in the New York and Mississippi Land Company; and they believe Edward Orne to be his partner, and the confidential agent and attorney in fact of said Boston Land Company; that, of the aforesaid loan made by the New York Banking Company to the Hernando Banking Company, said Edward Orne used about forty thousand dollars in redemption of the issues of the bank, which he had received for lands sold by him as agent of said Land Company; that the Hernando Bank executed her bonds to the

amount of one hundred and thirty thousand dollars, and placed them in the hands of one Benjamin D. Whitney, of Boston, brother-in-law of said Orne, to be sold for the benefit of said bank; that said Whitney, according to said Orne's instructions, handed over said one hundred and thirty thousand dollars of bank bonds to said J. Delafield, president, as additional security for the before mentioned loan, and without the knowledge or authority of the board of directors; that complainants own more stock than any other three stockholders, for that they have secured between ninety and one hundred thousand dollars out of about three hundred thousand dollars, and that they own a separate interest, in their individual names, to a large amount of property, in the town of Commerce, and of notes in the possession of the bank attorney for collection; that the Hernando Bank has become wholly unable to meet its engagements, &c. because said Delafield has failed to fulfil his contract, and said Orne has seized, without authority, on the New Orleans funds, as aforesaid; that Bybee is under Orne's influence, and that, Orne being a partner of Delafield, they are both wholly unfit to manage the affairs of the bank; that said bank must rely on process of law to render its debts available, and, to save the associates from ruin, complainants pray for the appointment of a receiver to wind up and close the affairs of the bank; that defendants be required to answer, &c.; that said Orne and Bybee be enjoined from exercising the functions of their office, and that accounts, &c. may be had, and all the effects placed in the hands of a commissioner.

To all this two separate answers are filed, one by each party on whom process was served, to wit: Joseph N. Bybee and Edward Orne—which answers state as follows, to wit:

The answer of Joseph N. Bybee, respondent, saith—It is true complainants were enjoined as directors, and that at that time Edward Orne was president, and respondent cashier; that he did deliver the keys of the bank to said sheriff, but did so in ignorance of the requisition of law, in obedience to which he supposed he was acting; that the keys were immediately returned; were not out of his sight a moment; that no injury did arise or accrue to

the bank therefrom, and that he has acted since as agent of the *bank.*

The sale of furniture to Hallett was conditional. Hallett was a creditor of the bank for more than four hundred dollars, and the furniture was paid to him for said debt, with privilege of redemption on payment of the money on said debt.

The exchange of bank notes for certificates of deposit made by the bank, did not exceed two hundred dollars, and that by the exchange neither the nature nor liability of said bank was changed; that respondent had no favorites, and that he never refused access to books or any information which complainants ever asked for; that the amount of Felix Lewis's debt was about two thousand dollars; that he paid sixteen hundred dollars of it, and his deed was released for the balance on his pledge to pay the same promptly in par funds; that Edward Orne had a large deposit in bank, and to pay the note or notes referred to of R. E. Orne, he drew a check on his deposit and received the notes, as he had a right to do. The debt of said Murray is secured by a deed of trust on a valuable section of land. The debt is only $2,000, and, with the approbation of one of complainants, in the exercise of reasonable discretion, respondent, as cashier and trustee, extended indulgence to said Murray, and by so doing did no injury to the bank. Said Orne did not check out, by a considerable amount, the sum he had then on deposit.

Mr. Delafield, president of the New York Banking Company, was the only capitalist who would render aid and support to the Hernando Bank; and, to secure his confidence and maintain it, the bonds in Mr. Whitney's hands were, by consent of respondent, delivered as farther security to Mr. Delafield; that complainants did, by their action, acquiesce in this act; that Mr. Delafield's contract was provisional, and, to secure the payment by said Delafield of the last instalments of the loan, it was necessary to ship cotton by January 1, 1840, to his agent in New Orleans; that the bank, in order to do so, appointed the complainants to make advances on and purchase cotton for said purpose; that complainants received over sixty thousand dollars for said purpose of meeting the engagement with said Delafield; and that said complainants

violated said trust, shipped the cotton to their own house, and thus mainly produced the present position of the bank.

Complainants filed the bill with a view to defeat the payment of their debts to it and destroy the institution; and the respondent farther believes the amount of stock they own in said bank is not sufficient to pay their liability to it; that the bank is temporarily prostrate, and that the appointment of a receiver would be productive of great loss, because part of the property of the bank consists of bills and notes due on conditions which cannot, in that case, be fulfilled.

Respondent denies fraud and incompetency; invites scrutiny; shows he owes the bank nothing, while complainants are largely indebted to it; denies all undue influence over him, and states, since the injunction has been served on him, he has delivered up all control of the bank.

The separate answer of Edward Orne saith, that he adopts the answer of Joseph N. Bybee to the charges in relation to the sale of furniture to Hallett; the debt of Felix Lewis, and Ed. Orne's deposit and check, and leaves the answer to No. 5 to his co-defendant.

Since the answer of said Bybee the money has been paid on the debt due by said Murray, and that ground of complaint is removed.

Respondent owned notes of the bank, received by him in the course of business. In payment of these he received notes payable in New Orleans, and thus only obtained what was actually his right and due to every creditor, and denies the statement made by complainants.

He expressly denies that he is a co-partner with John Delafield in any land company; has no connexion with him; and has not received forty thousand dollars, as stated by complainants.

Respondent confirms the answer of co-defendant, Bybee, in relation to the bonds in the hands of Mr. Whitney, and shows the necessity and great expediency of placing them in Mr. Delafield's hands to secure his confidence, and states the transfer was only as security; admits the bank is in bad credit, but ascribes it to the fact that complainants drew out more than sixty thousand dollars to advance on cotton to be sent to New Orleans to Mr. Delafield's

agent, as per contract; that said complainants were unfaithful to their trust, and in consequence Mr. Delafield refused to make farther advances. This, with the excessive issues made by the board, was the true cause of the bank's difficulties.

Respondent denies connexion with said Delafield, and undue influence over Bybee; he does not believe it advisable to wind up the affairs of the bank, and does not admit the jurisdiction of this honorable court therein.

Said respondent farther sets forth, that, since the filing of the answer of his co-defendant, Bybee, in this cause, a new election for Directors has been held in pursuance of the charter; that the complainants were not re-elected in the new board of directors, but that respondent was re-elected president, and his co-defendant, Bybee, cashier; and that the new directors are taking important steps towards fulfilling the obligations of the bank. He submits, therefore, whether the restraining order, heretofore made in this case, has not lost its influence from the new election. And still farther, respondent submits to this honorable court, as if he had demurred, how far it has jurisdiction in dissolving or taking away or adjusting the corporate rights and functions of the institution. He denies all fraud, &c.

Other parties were made defendants to this cause in the bill of complainants, but no process whatever has been served upon them. They, however, appear in this case, and have, by their attorneys, entered and filed a formal demurrer.

BARTON and CHALMERS for complainants. Brief not filed.

DELAFIELD, BRADFORD and CLAYTON for defendants.

Upon the state of facts in this case, the most important question which presents itself is, whether this honorable court possesses jurisdiction in the premises?

The parties to this cause are three members of an incorporated bank, complainants, and the president and cashier of the bank defendants. Certain others of the corporators, but not all, are named defendants in the bill of complaints, *pro forma*, but no

process has been served upon them.  *The corporation is not a party to the suit.*  The bill charges solely against the president and cashier.  No cause whatever is shown against the corporation nor against the corporators generally, yet a receiver is asked for in the bill to take charge of the effects of the *corporation,* and that a corporation on which no process has been served—against which none has been directed.  The bank is not a party to the bill.  The case, then, fails, and the demurrer of the defendants is sustained, for want of a proper bill and for want of proper parties before the court.

But were this bill well framed, and had it called in proper parties, has this court jurisdiction of the case—of the subject matter of the bill of complaints?  Has it power to grant the relief, or make the decree prayed for?  The sixteenth section of article 4 of the revised constitution of this state provides, that "a separate Superior Court of Chancery shall be established with full jurisdiction *in all matters of equity*," and then determines the powers of the court.  This is its original, and as the supreme court of this state has decided, its *exclusive* jurisdiction,  2 Howard's Reports, p. 861.  No law of this state has given this court any other, but on the contrary, the decisions are explicit in the cases reported by Howard, that the jurisdiction of the respective courts shall not be deemed concurrent.  No case decided on general principles can be cited, which will give the court a precedent for jurisdiction in a case like this, which belongs purely to common law.  And the legislature of New York was of this opinion when it gave to its chancery court, by express statute, the power to examine banks, to restrain them by injunction, and to appoint receivers to close their affairs.  Authorities from that state must be received as decisions on their local law.  Note to 2 Kent Com. p. 304.

These corporators, complainants, defendants and others not named, are associated under a *public law which this court cannot annul.*  It cannot, as in a partnership, dissolve the corporation because the purposes for which it was organized cannot be accomplished; nor can it interfere because it has even dissolved. *It cannot try that question.*  The *charter* which is the article of association, is beyond the jurisdiction of this court, for it is comprehended in the archives of the common law.  To this tri-

bunal alone can it be referred. It is admitted the jurisdiction of this court may comprehend corporations eleemosynary in their character, or fiduciary; *but those alone,* for most cases in their business, are purely within equity jurisdiction. "Civil corporations," (says Chancellor Kent in 2 vol. Com. p. 304,) whether public, as the corporations of towns and cities, or private, as *bank,* insurance, manufacturing and other companies of the like nature, are not subject to this species of visitation. They are subject to the general law of the land, and amenable to the judicial tribunals for the exercise and abuse of their powers. * * * * The better opinion seems, however, to be, that any corporation chargeable with trusts may be inspected, controlled and held accountable in chancery for an abuse of such trusts. With that exception the rule seems to be, that *all corporations are amenable to the courts of law, and then only,* according to the course of the *common law,* for non-user or mis-user of their franchises. 2 Kent's Com. 304.

Can this court interfere on charges of misconduct between the corporators, as such? The charter prescribes their mode of action. Their powers are defined by public law. This court cannot interfere, for it must proceed on the pretence of a violation of the charter. This is a question this court cannot try. These corporators have a law unto themselves, which is their charter. Under this they came together. They associated *voluntarily* under a fixed rule, which they well knew was beyond the control of this court. They took its advantages *cum onere,* and they must abide by it. They subjected themselves to the action of the corporate body under the charter. They placed a confidence in that body, which this court cannot interfere to impair or justify. One or two or three corporators, as in this instance, may be dissatisfied; but will the court, can it interfere to jeopardize or impair the corporate rights of their fellows? The defendants abide by their corporate rights. The complainants must abide by theirs. But suppose the actions unjust and inequitable? They either act under the charter, or they do not. If under the charter, it is clear that this court cannot interfere, however hard or inequitable their acts may be. If they do not act in accordance with the charter, they must act in violation of it. Should this court then inter-

fere, it must proceed upon such ground of violation of the char-
ter. Can this court do this? Can it declare a corporate act not
to be such? Can it declare any act to be in violation of the char-
ter? Can this court even interfere with the officers of a corpora-
tion, at the instance of corporators? The corporation acts by its
officers. In many cases they bind the corporators without their
consent. Their acts may be, and often are, the cause of forfeiture
of charter. They may cause a total loss of corporate property
by misconduct. If they violate the charter, they may cause a
judicial forfeiture. This would cause a total loss of the corporate
property, which in such case would either vest in the state, or
revert to original grantors. But can this court interfere to pre-
vent it? No authority is found for such a position. The same
objection exists to an interference in case of the officers as in case
of the corporators. Even though there be no adequate remedy
at common law, still the court will not interfere.

1. Because the parties voluntarily placed themselves under a
corporate law which is beyond the control of a court of equity;
a public law of the land.

2. Because this court cannot interfere unless on the ground of
forfeiture of charter, which is a matter of pure law, and not of
equity jurisdiction.

Lastly. The bill of complainants prays for a receiver. This,
in effect prays a dissolution of and destruction of the banking
privileges. Can the court grant this? A charter is a public law.
The destruction here prayed for would be in effect a forfeiture of
the charter, or a forcible and ruinous determination of vested
rights, before their legitimate expiration. The decisive action of
this court would be, in fact, a collateral determination of the ques-
tion of forfeiture of charter, which cannot be done collaterally, or
incidentally, or in any manner except by a direct proceeding for
that purpose, and then only by the government. Ang. and Ames,
Corp. 510. Otherwise a court of equity may indirectly annul a
law.

In the evidence before the honorable court, no case of gross
abuse is shown on the part of the corporators, except the com-
plainants, nor of their officers, nor is any charge made against the
body of the corporators. The president is the only corporator

against whom a charge is made. Is the whole body of corporators to pay the penalty of his offences? Both president and cashier, against whom charges are made, are subject to the stockholders, and may be removed for misconduct. They have then an adequate remedy at law.

The positions here taken relate to controversies between the corporators themselves. The jurisdiction of this court, in cases between third persons and a corporation, rest on other grounds, and cannot apply to this case.

That the corporation is a necessary party, see Robinson *v.* Smith, 3 Paige, 222. The case of Verplanck *v.* The Mercantile Insurance Company of New York and Barker, (2 Paige, 438,) shows very clearly the limit upon the powers of courts of chancery in regard to cases of this kind. Aside from the statute of that state of a late date, the court never goes farther in behalf of the stockholders of a corporation, than to restrain the individual directors from violating their trust. Ib. 451. The view there taken is conclusive against the exercise of the jurisdiction sought to be exercised in this case.

The answer of Orne is made to operate as a demurrer. Bybee is not a member of the corporation, and is fully under the control of the new board of directors. The same remark is applicable to Orne, as an officer of the institution. The reasoning which goes to show the court cannot exercise jurisdiction over the corporation, goes equally to show that it cannot appoint a receiver. And the cases last cited sustain the same position.

Upon these grounds it is submitted that the injunction should be dissolved and the bill dismissed. Indeed, since the new election of directors, the injunction seems to us to be inoperative.

In regard to the exceptions to the answers, a few words will suffice. There are many statements in the bill that are mere episodes, having no conceivable connection with the relief prayed for, and no tendency to make out a cause which the court would have jurisdiction to sustain. These matters it is unnecessary, according to all books of practice, to answer, and tried by this simple test, the answers are good. They do not evade or pass over any material allegation connected with the relief sought for. Take the second exception for example. Orne says he took six

or seven thousand dollars, not ten or fifteen thousand dollars, of New Orleans funds; that he took them in exchange for due funds which he held; that he knew of no order of the board to forbid it; and that he took only what any other creditor was entitled to. That is surely all that was necessary to show the honesty of the transaction.

In the fourth exception it is not distinctly stated in the bill that there is a Boston Land Company, distinct from the New York and Mississippi Land Company. The fact is, that there is no such company as the Boston Land Company; and my intimate knowledge of that fact led me to believe that they alluded to but one company.

But in various parts of the answer all connection with Delafield in business is disclaimed; and there is nothing in the charge which can affect the decree. This is true of all the exceptions.

The answer is, moreover, a demurrer, and avoids all objections in that way.

The injunction has, moreover, performed its functions—a new directory having been elected. Bybee is not one of the corporators; no decree can therefore be rendered against him affecting the injunction. The new directory can remove him at pleasure, if they think it necessary.

The CHANCELLOR.

This bill is filed by the complainants as three of the stockholders of the Hernando Rail Road and Banking Company, against Orne and Bybee, as a president and cashier, and against Hallet, Brown and others, as a portion of the stockholders in said company. The bill charges that the defendants, Orne and Bybee, are incompetent and unfit persons to have charge of the affairs of said company, and charges them with various acts of abuse, and delinquency in their official conduct, in misapplying the funds of the company and otherwise mismanaging its affairs. The bill prays for an injunction, which was granted, restraining the said Orne as president, and the said Bybee as cashier, from the exercise of their official functions as officers of said company. It also prays for the appointment of commissioners to take charge of the effects of the bank, of whatsoever character, and that the affairs of

*William H. Bayless v. Orne, Bybee et al.*

said bank "be finally settled up and closed—that an account be taken between the stockholders, &c."

The defendants, Bybee and Orne, have filed their answers, the latter insisting, by way of demurrer, upon the want of jurisdiction of this court over the subject matter of the bill. To these answers various exceptions are taken by the complainants. The defendants, Brown and others, have demurred to the bill, and rely upon the want of jurisdiction over the case, as also the want of proper parties. The case was submitted, by agreement, upon the bill and answers of two of the defendants, and upon the exceptions thereto, as also upon the demurrer of the other defendants. It is unnecessary to advert to the exceptions to the answers. The precedent question of jurisdiction must first be disposed of. It will be seen that the object and purpose of the bill is to divest the corporators of all authority and control over their corporate effects; to place the management and settlement of its affairs under the jurisdiction of this court, and thus work a complete dissolution of the corporation itself. Although the bill does not ask directly for a decree dissolving the corporation, yet if the relief asked would work that effect, the court is bound to look to the consequences.

The principle is well settled that charter privileges cannot be taken away by any collateral proceeding, nor in any other mode, than by a direct proceeding through the usual forms of a *scire facias*, or information in the nature of a *quo warranto*, regularly prosecuted in a court of law. Ang. & Ames on Corp. 510.

These modes of proceeding belong exclusively to courts of law; for, though chancery may hold persons who sustain the relation of trustees to a corporation, accountable for abuse of their trust, yet it cannot dissolve the corporation itself, nor divest it of its corporate character and capacity. 3 John. R. 134; 5 John. C. R. 380; 2 John. C. R. 388; 17 Ves. 491; 5 Term R. 85.

It cannot be concealed that to decree the prayer of the complainants' bill would be to decree a dissolution of the corporation. In this respect it differs materially from bills which have frequently been entertained by courts of equity, at the instance of stockholders against the directors of a corporate company, to compel them to account for the improper use of funds, or to restrain them from violating their trust. That a court of equity, as such, has

15*

not jurisdiction or power over corporate bodies, for the purpose of restraining their operations or winding up their concerns, is, I think, well settled by various authorities. 1 Edwards's C. R. 84; 2 John. C. R. 371–8.

In the case of the Attorney General *v.* Bank of Niagara, 1 Hopkins, 354, where, pending a proceeding before the supreme court of New York for the purpose of annulling the charter of the bank, an application was made for an injunction to restrain the bank from making discounts, receiving deposits or issuing notes, the chancellor held that there was no authority to be found to warrant such an application, and that it was very clear that the court had not jurisdiction over the case. It may be remarked that the legislature of that state, shortly after this decision, conferred jurisdiction upon its courts of chancery over incorporated companies, to the extent of enjoining them and winding up their affairs in the manner pointed out by the statute. In a subsequent case, where a similar application was made, the chancellor said the application must be considered as founded altogether upon the statute above referred to, and that the general jurisdiction of a court of equity did not extend to the case. Hop. C. R. 598, Attorney General *v.* Bank of Chenango.

I entertain no doubt that this court has jurisdiction at the instance of stockholders to call the *directors* of a monied or other joint stock corporation to account for any abuse of trust or waste or misapplication of the funds of the company. But in such case the jurisdiction is over the directors *personally*, and not over the corporation. Robinson *v.* Smith, 3 Paige Ch. 222.

The directors of an aggregate corporation, who are charged with the control and direction of its affairs, become the agents and trustees of the corporation, and in their trust character may be held accountable in this court, at the instance of the stockholders, for dereliction of duty or fraudulent breach of trust. Verplanck *v.* Mercantile Insurance Company, 1 Edw. C. R. 84.

In such case it is the *trust* relation which gives jurisdiction to the court; and chancellor Kent said, to this plain and ordinary head of equity the jurisdiction of chancery over corporations ought to be confined. Attorney General *v.* Utica Insurance Company, 2 J. C. R. 388. But such relation does not exist between

the stockholders and the corporation itself, nor between different sets of stockholders of the same company. The relation of trustees and *cestuis que trust* requires separate and distinct persons to constitute it, whereas the stockholders of an incorporated company are one and the same. Their individuality is merged in the artificial person of which they are component parts. 1 Edwards's C. R. 84.

In the case now before me the bill is filed by the complainants, as stockholders, against Orne and Bybee as president and cashier, enjoining them from the exercise of their official functions, and for an account of alleged misuse of monies, and against the other defendants as stockholders of the Hernando Rail Road and Banking Company. So far as the defendants Brown and others are concerned, as joint stockholders with the complainants, it is obvious, from what has been already said, that there is no ground for entertaining the bill; for as between them the *trust relation* which gives jurisdiction does not exist. This disposes of the case as to the defendants, who are made such upon no other ground than that of their being stockholders in said company.

The next inquiry is, can the suit be sustained by the complainants, as stockholders, against the defendants Orne and Bybee, for the purpose of compelling an account for monies used or misapplied by them as president and cashier of said company. I think it may be laid down as a general rule, that suits brought for the purpose of compelling the ministerial officers of a private corporation to account for breach of official duty or misapplication of corporate funds, should be brought in the name of the corporation. Such officers are directly amenable to the directors of the company, who are charged with the protection and management of its affairs, and who direct its corporate action. Robinson *v.* Smith, 3 Paige Ch. R. 233. This rule might be dispensed with if it were alleged and made to appear that the directory of the corporation connived at the delinquency or misconduct of its officers, or refused to bring them to account by suit. In such case, the stockholders as the real and ultimate parties in interest would be permitted to bring suit directly in their own names. (Ib.) I think, then, that the objection for want of proper parties is well taken. So far as the case depends upon the injunction granted

against the aforesaid officers of the company, I am unable to perceive any thing in it which warrants the jurisdiction which was assumed for that purpose.

Every corporation has *within itself* the power of guarding against any apprehended or threatened abuse of its ministerial officers. The right of amoving an officer of a private corporation, without any express provision for that purpose, is considered an inseparable incident of corporate powers. Ang. & Ames on Corp. 58. And such right of amotion may be exercised when gross delinquency or other misconduct of officers indicates the necessity and propriety of such action. This right of removal for breach of duty applies as well to officers whose office is of the essence of the corporation, (such as the directors of a corporate company,) as to those who are mere executive agents. But a material distinction exists between the first class of officers and those whose duties are merely *ministerial*, such as the cashier and other executive officers of a bank, who are usually appointed *durante bene placito*, and may be removed without any other cause than that of its being the pleasure of those who appointed them. In such case it is said the right to amove is, of course, incident to the right of appointment, Ang. & Ames Corp. 247, and I take it for granted that such officers may be amoved *for cause*, even where the tenure of office is fixed for a definite period.

It may be said that the bill in this case does not ask a *removal* of the officers; but I conceive an injunction indefinitely suspending an officer, is in its character so near akin to an absolute removal, as to defy any sound distinction between the two modes of accomplishing the same thing. The right of amoving the officers of a private corporation belongs exclusively to the corporation itself; this court has no jurisdiction or power for such purpose. In the case of the Attorney General *v.* the Earl of Clarendon, 17 Ves. 491, it was distinctly laid down by the master of the rolls, that chancery had no jurisdiction with regard to the amotion of corporators of any description. If this be true, it would seem to follow that this court cannot by its injunction suspend a corporator or officer from the exercise of their corporate or official privileges, and thus do indirectly that which may not be done directly.

It may be again repeated that a court of equity has no general jurisdiction over corporations or corporators, except so far as the transaction may assume the character of a trust, and place the parties in the relation of trustees and *cestuis que trust.*

The principles of this case are new in this state, and I have regretted that I have been compelled to throw these views together somewhat hastily, rather as furnishing some of the reasons which have influenced my mind, than as a thorough and finished view of the subject.

The demurrer must be sustained, the injunction dissolved and the bill dismissed.