*Charles Hart & Charles H. Parkhurst*, for plaintiff.

    *George H. Browne, Benjamin F. Thurston, Henry J. Spooner & Lorin M. Cook*, for defendant.

---

# NEWPORT COUNTY.

---

ISAAC P. HAZARD *et al. vs.* THOMAS J. DURANT *et als.*

In what circumstances a motion to purge from contempt of court will be dismissed.

An appeal to the full court being given by statute from decrees entered by a single judge: *Held*, that a party, although in contempt, was entitled to claim and prosecute his appeal, the appeal being a matter of right.

By Rhode Island practice it is not necessary for process to issue in order that a party may be actually in contempt.

In an equity suit brought by certain stockholders for themselves and such other stockholders as might join them against one Durant, an officer of the Credit Mobilier of America, and against the Credit Mobilier, to charge Durant with certain corporate funds said to have been appropriated by him, the bill alleged a request to the corporation to bring the suit, as follows : —

"And your orator had well hoped that the said defendant corporation, the Credit Mobilier of America, would protect the rights and interests of its stockholders in the premises, and by proper proceedings at law or in equity compel the said defendant Durant to account for said moneys wrongfully and fraudulently converted to his own use, and withheld from said company as aforesaid, and that he would account for and pay over the same. And that said corporation would compel the said Durant to transfer all stock, bonds, moneys, and other rights and interests aforesaid, procured with and by the proper moneys of said corporation, to the same and to its stockholders. But now, so it is, may it please your honors, that the said defendants, though requested so to do, have wholly neglected and refused to comply with these reasonable expectations and requests of your orator."

*Held*, that this allegation of a request would be sustained by proof of a request made in any mode, provided only that it should in legal effect be a request to the corporation.

The directors of the corporation delegated their full powers to an agency managed by an executive committee, one of whom was the complainant, and subscriptions to the corporate stock had been made upon condition that this delegation should take place : —

*Held*, the corporation having entered an appearance, but having made no answer or other defence, that the complainant's request to this executive committee was a request to the corporation.

In case a corporation on request refuses or neglects to bring suit against a defaulting officer, such suit may be brought by a stockholder for himself and his co-stockholders, making the corporation a party respondent.

A corporation cannòt gratuitously condone or release the fraud of a defrauding officer, except by a ûnanimous vote of its stockholders.

When a petitioner alleges that by an error of the court he has been adjudged in contempt, full and convincing proof of the error must be adduced.

*Query.* When the principal respondent denies the allegations of a bill in equity, and asks permission to defend, which is only refused because he is in contempt, whether a court should in any event enter a decree against him without first referring the case to a master, to examine the truth of the charges of the bill?

In equity pleading, allegations are generally sufficient if proof can be admitted under them which entitles the complainant to relief.

BILL IN EQUITY brought by Isaac P. Hazard, a stockholder in the Credit Mobilier of America, on behalf of himself and such other stockholders in said corporation as might become parties, against Thomas C. Durant, charging him with the fraudulent conversion of funds belonging to the corporation.

The respondents to the bill are Thomas C. Durant, whilom president of the Credit Mobilier; the trustees of the Oakes Ames contract, which is the subject of one of Durant's alleged frauds; the Union Pacific Railroad Company, in respect to which frauds are also charged; and the Credit Mobilier of America. The bill was filed August 22, 1868, when a writ of *ne exeat* was issued against Durant, and also injunctions forbidding him to transfer any stocks or bonds of either the Union Pacific Railroad Company or the Credit Mobilier of America, standing in his name, and forbidding him to receive any dividends from the Union Pacific Railroad Company, or the Credit Mobilier, or the trustees of the Ames contract.

August 24, 1868, the writ of *ne exeat* was discharged, and a bond in the nature of a bail-bond was substituted.

On the 3d of October, 1868, a petition was filed for the removal of the causes to the United States Circuit Court, which was dismissed on the 2d January, 1869. 9 R. I. 602. Meanwhile a petition for the same purpose was filed in the Circuit Court of the United States, which was refused at the June Term, 1869.

On the 3d of January, 1870, an affidavit of Roland G. Hazard was filed in the case, setting forth that Durant had received from the trustees of the Oakes Ames contract a dividend consisting of 11,316 shares of stock in the Union Pacific Rail-

road Company, in violation of the injunction issued August 22, 1868.

February 7, 1870, Durant was adjudged guilty of contempt of court in receiving this dividend.

May 28, 1870, a decree was entered taking the bill *pro confesso.* This decree was made by a single justice, under Pub. Laws R. I. cap. 692, of March 15, 1867, and an appeal from this decree was taken to the full court, June 25, 1870.

February 19, 1875, a motion was made by the respondent, Durant, for leave to purge himself of the contempt, on the ground of a settlement made with the complainants in October, 1870.

The facts of the case as found by the court, so far as they are needed to make its decisions intelligible, are given in its opinions.

A full sketch of the proceedings in the case is given in the opinion of December 28, 1875.

The motion of February 19, 1875, was heard at Providence, July 9 and 12, 1875.

*Providence, July* 26, 1875.    POTTER, J.    In this suit the respondent, Dr. Durant, having been, after a hearing before a single judge, adjudged in contempt, an order was entered September 22, 1870, that he be allowed to purge himself of the contempt for violation of an injunction and order therein named, by filing on or before October 1, 1870, a bond in the sum of $95,000, conditioned, &c.    The bond was not filed.

The suit having since been proceeded with, the respondent, on February 19, 1875, made a new motion to be discharged of the contempt, and to resume the hearing of a motion formerly made by him for dissolution of the injunctions.

The hearing of that motion having been several times postponed, it came on, and was heard by the full court at Providence, July 9 and 12, 1875.

The respondent offers evidence that certain negotiations were commenced between the parties in September, 1870, with a view to a settlement, and certain memoranda made.    We understood it was contended for the respondent, in the opening, that it was equivalent to a complete settlement ; but that contention was withdrawn in the close, and the negotiations relied on only as a reason why the order was not complied with.

We think, as far as we can judge from the evidence now before us, that not only no settlement was completed, but that Durant, although he might suppose it would be completed, was not justified in treating it as completed; and that, therefore, there is no good ground for granting the motion now made.

We shall not, however, hold the respondent concluded by this decision, if he renews the motion and accompanies it with an offer of terms satisfactory to the court.    *Motion denied.*

September 20, 1875, the motion to purge from contempt was renewed, and was refused by an oral opinion of the court, given in Providence, November 23, 1875.

Meanwhile, May 22, 1875, a motion was made by the complainants to dismiss the appeal taken June 25, 1870, on the ground that Durant, being then in contempt, could not take such an appeal.    This motion was heard in Providence, December 11, 1875.

*Providence, December* 28, 1875.    POTTER, J.    This is a motion filed May 22, 1875, to dismiss an appeal from the decree of a single judge filed in the clerk's office June 25, 1870, while cap. 692 of Public Laws, passed March 15, 1867, was in force, by which all hearings in equity might be before a single judge with a right of appeal to the full court.

The respondent, Durant, had entered an appearance by his attorneys, Thomas A. Jenckes and Charles C. Van Zandt; but not having answered, an order to take the bill *pro confesso* was entered under the rules in the clerk's office, February 8, 1869.

At that time a petition for removal of the cause to the United States Circuit Court, which had been filed in the state court October, 1868, was pending.    The state court, December 28, 1868, denied the petition.[1]    An appeal from this denial was taken January 2, 1869, to the full court, which appeal was not withdrawn until June 16, 1869.    While these proceedings were had in the state court, the papers for removing the case had been filed in the United States Circuit Court, November 19, 1868, and in September, 1869, the question of removal was decided adversely by Judge Clifford.

---

[1] See 9 R. I. 602.

May 18, 1869, while the cases seem to have been on the docket in both courts, a motion was filed in the state court to rescind the order to take the bill *pro confesso.*

August 22, 1868, on the filing of the bill an injunction had been granted without notice against the respondent, Durant, to restrain him, until further order of the court, from transferring, pledging, &c., certain stocks, and from receiving any dividends thereon, which was served on him the same day.

On December 31, 1869, an order was made for Durant to produce certain books and papers, of which personal service was made January 7, 1870.

1870, January 5, Durant was allowed sixty days to answer.

1870, January 5, a motion was made founded on affidavits to commit Durant for violation of the injunction of August 22, 1868, and January 15, a motion for attachment for not producing the books and papers, as ordered December 31, and a hearing was had January 29, 1870.

February 7, an order was entered, the court being of opinion that Durant was guilty of contempt, that he should stand committed February 17, unless he produced the bonds, certificates of stocks, and showed cause, &c.

1870, March 21, a further hearing was had, Durant having filed an affidavit, &c. By order of March 22, entered by the clerk, April 4, the time for compliance was extended to April 7, — then to be absolute.

1870, May 18, the complainants moved to proceed to decree, and it was argued at Newport, Charles C. Van Zandt representing Durant.

1870, May 27, a decree was made (entered the 28th) that the defendants having appeared, but not answered, the bill be taken as confessed; that Durant pay into court certain moneys; and that, until said payment, all the stocks and bonds of said defendant corporation, held by said Durant, with dividends, shall be deemed and taken, so far as paid for with said moneys, the property of the Credit Mobilier and its stockholders; that the cause be referred to James Tillinghast, as master, to take an account. On his report all money shall be paid into the court, to be apportioned and paid to the parties to whom it may belong; in the mean time, to be a lien on all stocks, &c., and all injunctions and other orders to continue in force.

1870, June 25, a claim of appeal to the full court from this as a final decree was filed in the clerk's office.

After this was filed the following proceedings were had before the same single judge.

1870, August 16, an attachment was ordered against Durant for breach of orders of February 7, and April 4, 1870, and breach of injunction of August 22, 1868, which was served August 17.

1870, September 3, Durant had filed a motion to set aside the decree *pro confesso*, for leave to answer (and filed an answer as an affidavit), and to dissolve the injunction of August 22, 1868, and orders of February 7, April 4, and August 16, and the orders as to arrest and contempt.

The hearing was commenced at Newport, Saturday, September 3, 1870, *present: Peckham*, for complainants; and *Jenckes & Van Zandt*, for respondents, and was adjourned to Monday, when *Bradley* also attended for the complainants.

The complainants then, September 5, filed a motion for attachment for disobeying the order of December 31, 1869, relating to the books and papers, and a motion for attachment for disobeying orders of February 7 and April 4, 1870, relating to the bonds, &c.

After hearing counsel, an order was made September 5, for interrogatories, to which answers were filed September 7, as also a motion for discharge from custody.

After many hearings, affidavits, answers to interrogatories, and after argument as to the security to be given and its amount, on which Messrs. Jenckes & Bradley were heard at length, an order was made on September 22 to vacate the attachment, and all orders as to contempt, on Durant's giving certain security on or before October 1, which was not done.

On April 7, 1874, Mr. Bradley, for the complainants, gave notice to the respondents' attorney of intention to proceed; and (a commission having in the mean time been taken out January 25, 1875, under the decree, and the hearing commenced before the master) March 26, 1875, the parties met before the court, and the hearing was adjourned; Durant to file affidavits, and a time to be set for further hearing.

Two motions made by Durant to purge his contempt have since been heard before the full court, and both dismissed,

This motion to dismiss the appeal was also heard before the full court: *Peckham & Bradley*, for complainant; *Honey, Van Zandt & Payne*, for respondents.

It was contended that the appeal was irregularly taken, because Durant was then in contempt; that he could not prosecute his appeal if allowed; and that it would embarrass the proceedings before the master, and should therefore be taken from the files or dismissed.

Ordinarily a person in contempt cannot be heard except to purge himself, or to set aside the order for irregularity.

It has been argued that a party is not actually in contempt until process issued.

This misunderstanding has grown out of the fact that our practice is in many respects different from the English. In the English Chancery the practice of taking bills *pro confesso* was confined to a very few cases. The courts in order to make a binding decree, were obliged to use a very complicated process to compel an appearance, and then to compel an answer. Any failure to appear or to answer in time was treated as a contempt; but such contempt might ordinarily be purged, as of course, on doing the act required and paying costs. It is to these cases, termed common or ordinary contempts, that the doctrine referred to applies, and not to special or extraordinary contempt, disobedience of special order, &c. 1 Daniel Chanc. Pr. 490; 2 Fowler Excheq. Pr. 402; Turner's Exch. Pr. 103.

But in this case the appeal is given by statute. It is from the preliminary, though if not appealed from, final decision of one judge to the full bench.

We consider it as a matter of right, and must therefore allow it. Although the party if in contempt still remains so, he is enabled to remove the hearing of any motion he is entitled to make before a new tribunal, upon whom he can rely as not being prejudiced against him from the effect of previous hearings.

The motion to dismiss the appeal is therefore denied.

*Motion denied.*

Subsequently the motion to purge from contempt or for permission to defend the suit was renewed before the full court, and was heard in Providence, March 2 and 3, and June 23 and 24, 1876.

*Providence, March* 10, 1877.   Durfee, C. J.   This is a petition by the defendant, Thomas C. Durant, who has been adjudged to be in contempt for violating an injunction of this court, to be purged of the contempt, or to be permitted to defend the suit without being purged.   Several grounds have been assigned in support of the petition.

The first ground is that the suit is without equity.   It is a suit by the plaintiffs, as stockholders of the Credit Mobilier of America, for themselves and such other stockholders as may join them in the suit, to charge Durant for fraudulently converting to his own use the funds of the corporation, while acting as its president and controlling its affairs.   It is said the proper party to bring such a suit is the corporation, and that a stockholder, if he can do it at all, cannot do it unless the corporation is under the control of the guilty party, which in the case at bar is not pretended, or unless the corporation or its directors, being requested, refuse to bring the suit.   And it is claimed that no such request and refusal are alleged or are sufficiently alleged in the bill.   The only allegation of request and refusal is the following :

" And your orator had well hoped that the said defendant corporation, the Credit Mobilier of America, would protect the rights and interests of its stockholders in the premises, and by proper prcoeedings at law or in equity compel the said defendant, Thomas C. Durant, to account for said moneys wrongfully and fraudulently converted to his own use, and withheld from said company as aforesaid, and that he would account for and pay over the same.   And that said corporation would compel the said Durant to transfer all stock, bonds, moneys, and other rights and interests aforesaid, procured with and by the proper moneys of said corporation, to the same and to its stockholders.   But now so it is, may it please your honors, that the said defendants, though requested so to do, have wholly neglected and refused to comply with these reasonable expectations and requests of your orator."

The request might have been more explicitly alleged, but we do not think it can be fairly said that it is not alleged at all.   But it is claimed that, if it is alleged, it is not sufficiently alleged, inasmuch as it is not alleged to have been made to the stockholders at any corporate meeting, nor to the directors in office at the com-

mencement of the suit. The allegation in the bill is simply an allegation of a request to the corporation, without particularizing how or when it was made. The allegation will be sustained by proof of a request to the stockholders in corporate meeting, or to the directors in office when the suit began, or in any other mode, so that it be in legal effect a request to the corporation. We have examined the cases cited for the petitioner, and do not find that they show that any fuller allegation is required. In *Brewer* v. *Boston Theatre*, 104 Mass. 378, 389, which is chiefly relied on, no request was alleged to have been made either to the corporation or to the directors, and it did not even appear that the directors in office when the suit was brought knew of the facts on which it was grounded. A demurrer filed by the corporation was sustained. But even in that case the court remark, that " a formal application and refusal need not be alleged, if enough appears to show that such an application would be unavailing." Generally in equity pleading the allegations are sufficient, if under them proof of facts can be made which entitles the plaintiff to relief. *Dike et al.* v. *Greene*, 4 R. I. 285. We see no reason why greater strictness should be required in this allegation. And we therefore think the bill is not in this respect devoid of equity.

It is claimed that the request, if duly alleged, never was in fact made. Upon this point affidavits have been submitted by both sides. It does not appear from them that any request was ever made directly to the corporation or to the directors at any meeting of their board. It does appear, however, that the board consisted of seven members; that they had delegated the full powers of the board to an agency in New York, which from May, 1867, to May, 1870, was managed by an executive committee of the board, composed of Sidney Dillon, then the president of the corporation, John B. Alley, and the plaintiff, Rowland G. Hazard; and that, after the creation of the New York agency, the other four directors did little or nothing except attend the annual meetings of the board for the purpose of organization. It also appears that, in 1867, Rowland G. Hazard was assiduous in urging the executive committee to prosecute Durant for his alleged frauds, and that the committee undertook the prosecution, employed counsel, and had them draft bills of complaint; but that they deferred from time to time to enter

the suits in court, and finally, after October 16, 1867, refused to proceed further and let the prosecution drop. This suit was commenced August 22, 1868.

The request, therefore, though not made directly to the corporation or to the board of directors, was made to a committee having the powers of the board in so far as they could be delegated; and it does not appear that the action of the committee in refusing to comply with the request is either repudiated or disapproved; but, on the contrary, the corporation,· although it has entered its appearance in this suit, makes no answer nor defence, thus virtually confessing the allegation that it has been requested to prosecute Durant for his alleged fraud, and has wholly neglected and refused so to do. It appears, moreover, that the members of the Credit Mobilier, and Durant among them, subscribed for their stock in it upon the express condition that the full powers of the board of directors should be delegated to the New York agency. We think the action of the committee is, under the circumstances, to be regarded as the action of the corporation, and that Durant, therefore, fails to show that the corporation has not been requested to sue him, or that, being requested, it has refused to do so.

Another point made under this head is, that the suit cannot be maintained because it is within the power of the corporation to release or condone the wrong; meaning, we suppose, that it may do this gratuitously and by mere refusal or neglect to prosecute. To this point are cited *Gray* v. *Lewis*, L. R. 8 Ch. App. 1035, 1051; *In re London & Mercantile Discount Company*, L. R. 1 Eq. 277; *Atwool* v. *Merryweather*, L. R. 5 Eq. 464, note.

In *Gray* v. *Lewis*, L. R. 8 Ch. App. 1035, the suit was by a shareholder in behalf of himself and other shareholders against certain directors and others. The bill did not allege that the corporation was under the control of the guilty parties, nor that any effort had been made to get the corporation to bring the suit. The court held that the corporate body was the proper plaintiff and the only proper plaintiff. The suit, however, was so entirely devoid of merit, that the court said there was not only a wrong plaintiff, but a wrong forum, and " no cause of suit by a right plaintiff in a right forum." Sir W. M. James,

L. J., with reference to the point that the suit ought to have been brought by the corporation, said : " If the company sued. in its corporate character, the defendant might allege a release or a compromise by the company in its corporate character, — a defence which would not be open to a suit where a plaintiff is suing on behalf of himself and other shareholders." The language is broad, and yet it should not be taken too literally, for the lord justice, in the course of his opinion, refers with approval to *Atwool* v. *Merryweather*, L. R. 5 Eq. 464, note, in which a suit by a shareholder to enforce a right of the corporation was maintained. And we do not understand, moreover, why the release of a claim by the corporation, or the compromise of a claim with the corporation, if made fairly and without fraud, would not be as effectual a defence to a suit by a shareholder as by the corporation ; for the suit, whether brought by a shareholder or by the corporation, could not be maintained after the claim on which it was brought had been lawfully discharged or satisfied.

In *Gray* v. *Lewis*, L. R. 8 Ch. App. 1035, Lord Justice James refers in support of his views to the cases of *Foss* v. *Harbottle*, 2 Hare, 461, and *Mozley* v. *Alston*, 1 Ph. 790.

In *Foss* v. *Harbottle*, 2 Hare, 461, the defendants in their character of directors purchased their own land for the corporation, and paid themselves an extravagant price out of the corporate funds. The suit was by two stockholders to set aside the purchase. It did not appear that any effort had been made to get the corporation to bring the suit. The court held that the suit was not well brought, because the purchase being merely voidable might be confirmed by the corporation. In giving judgment, however, Vice-Chancellor Wigram said : " I follow, with entire assent, the opinion expressed by the vice-chancellor in *Preston* v. *The Grand Collier Dock Company et als.* 11 Sim. 327, that if a transaction be void and not merely voidable, the corporation cannot confirm it so as to bind a dissenting minority."

In *Mozley* v. *Alston*, 1 Ph. 790, the bill was held to be demurrable, not because the act complained of was capable of being condoned or confirmed, but because it did not allege any effort to have the suit brought by the corporation, nor explain why it was not or could not be so brought.

We do not think the doctrine of Lord Justice James, if it is to be understood as broadly as it was expressed, is warranted by either of these cases.

In *In re London & Mercantile Discount Company*, L. R. 1 Eq. 277, there was no question of any release or condonation. The corporation was engaged in voluntarily winding up under an.act of parliament. Certain shareholders petitioned the court to supervise the winding up, or to appoint a liquidator to take proceedings in the *name of the company*, in respect of certain fraudulent or improper transactions alleged to have been perpetrated by some of the directors, and by other persons with their connivance. The court refused to grant the petition, not because the fraud had been or could be condoned or released, but because a majority of the stockholders were opposed to suing, and because there was no evidence that there had been " an overbearing majority got together or influenced fraudulently by those whose acts are impeached." In denying the petition the judge also said: " I should ultimately be forcing on a litigation at vast expense to the company against the wishes of a majority; whereas, by abstaining from interference, I throw no obstacle in the way of the petitioners *prosecuting any litigation they may think right at their own risk*. I only throw on them the risk of such litigation; they may file their bill, and my refusal to make an order on this petition will in no way prevent their doing so."

In *Atwool* v. *Merryweather*, L. R. 5 Eq. 464, note, a suit by a shareholder in behalf of himself and other shareholders was sustained, and the suggestion that the majority of a corporation could sanction or gratuitously condone a fraud upon the corporation, in spite of a dissenting minority, was pointedly condemned. " The whole thing," said Vice Chancellor Wood, referring to the alleged wrong, " was obtained by fraud, and the persons who may possibly form a majority of the shareholders could not in any way sanction a transaction of that kind."

The jurisdiction does not appear to be so firmly settled and defined in England as in this country, but we do not believe any English judge has ever decided that a president or director, who fraudulently converts or embezzles corporate funds, cannot be sued in equity by a stockholder, when the corporation wilfully

neglects or refuses to bring the suit. Indeed, to hold that a corporation could gratuitously condone or release such a fraud, by anything short of unanimous consent, would be monstrous; for it would be in effect to hold that a president or director, who can control a majority vote in the corporation, may rob or despoil it with impunity. There are numerous American cases which hold that, in such circumstances, a stockholder may sue for himself and other stockholders, making the corporation a co-defendant with the guilty parties. *Robinson et al.* v. *Smith et als.* 3 Paige, 222.; *Verplanck et al.* v. *The Mercantile Ins. Co.* 1 Edw. Ch. 84; *Bayless* v. *Orne Bybee et al.* 1 Freem. (Miss.) 161; *Cunningham* v. *Pell,* 5 Paige, 607; *Butts* v. *Wood,* 38 Barb. S. C. 181; also in 37 N. Y. 317; *Hodges* v. *N. E. Screw Co. et als.* 1 R. I. 212, 340, 341; *Spering's Appeal,* 71 Pa. St. 1. A mere majority, in our opinion, could no more condone such a wrong gratuitously than it could originally have sanctioned it. And if the claims in suit have been compromised or released in any lawful and binding manner, we think that is matter of defence which should be pleaded, not presumed.

We do not find enough in the first ground assigned for the petition to support it.

The second ground assigned in support of the petition is, that the petitioner is not guilty, and has been erroneously adjudged to be guilty, of contempt. This ground, if allowable at all, being contrary to the finding of the court, should be sustained by full, clear, and convincing proof.

The injunction was ordered August 22, 1868. It prohibits Durant from transferring any interest in the Oakes Ames contract, so called, "and from receiving dividends thereon, in money, stock, bonds, or otherwise, to which the said Durant may be or may become entitled." Durant was adjudged guilty February 7, 1870, of receiving a dividend of 11,316 shares of Union Pacific Railroad stock, issued to him December 31, 1868, under this contract. This is the contempt of which he is now seeking to purge himself. He says the dividend was in fact a dividend of profits accruing under the Davis contract, so called, and should have been made under that contract, and not under the Ames contract.

The Ames and the Davis contracts were contracts for building

connecting sections of the Union Pacific Railroad. Both contracts, after being made, were assigned to the same trustees for the benefit of *cestuis que trust*, some of whom were different, or were differently entitled under the two contracts. The petitioner claims that the two contracts were so confused by the trustees, that, inadvertently, the dividend was charged to the Ames contract, when, in fact, the property from which it was made belonged to the Davis contract. The error, if it occurred, occurred several years ago, and has been acquiesced in ever since. Even the petitioner, though at first protesting, accepted the dividend and has spent it. He ought not, in such circumstances, to ask us to believe in the existence of such an error without fully exposing the doings under both contracts, and showing how and when the error occurred. He does not do this, but merely submits a brief and blind statement of receipts and disbursements under the Ames contract, verified by the oaths of Henry C. Crane, secretary of the trustees, and Benjamin F. Bunker, and accompanied by their affidavits asserting simply the existence of the error. The statement differs from other sworn statements made by Crane. If the error exists it can certainly be better proved, and before we act upon it as existing it ought to be better proved. We refuse to allow the petition on the second ground assigned.

The third ground is, that the contempt was not intentional. We should look with more favor on this ground if the petitioner, when found guilty, had made all the reparation he could. He could then have deposited in court the certificate of shares improperly received. He was ordered by the court so to deposit it and other certificates. Instead of doing it he disposed of the stock. His excuse for this is, that the plaintiff waived the injunction. He refers in proof to an agreement which waives the injunction in respect of the Union Pacific Railroad Company, but which, in respect of him, instead of waiving the injunction, expressly provides that it shall not be waived except on fulfilment of certain agreements which he does not pretend to have fulfilled. We must refuse to relieve him from his contempt upon the ground that it was not intentional.

Other grounds are assigned, but they are not such, in our opinion, as entitle the petitioner to be purged of his contempt

without giving bond as required by the previous order of the court.

The petitioner asks, that, even if his petition to be purged is not granted, he may, nevertheless, be permitted to appear and defend the case by demurrer, plea, answer, and proofs. He rests this request upon the ground that he cannot give the bond required for his purgation, and that the court will be doing great injustice if it proceeds without allowing him to defend, inasmuch as he has a good defence. He cites no precedent in support of his request. We are not prepared to grant it. It does not follow, however, that we are to abandon the suit to the plaintiffs. A decree *pro confesso* is not to be entered unless the plaintiffs, upon the face of their bill, are entitled to equitable relief. And in the peculiar circumstances of this case, where the principal defendant denies the allegations of the bill, and asks to be permitted to defend against them, and is only refused the privilege of defence because he is in contempt, the question arises whether we ought, in any event, to enter a decree against him, without first referring the case to a master to ascertain the truth of the allegations, so that our minds or consciences may be satisfied upon that point. This is a question, however, upon which we have not heard the views of counsel, and upon which we do not desire to express an opinion until we have heard them.

The petition upon which the hearing has been had will be dismissed.  *Petition dismissed.*

*Charles S. Bradley & Francis B. Peckham, Jr.*, for the complainants.

*Abraham Payne, Charles C. Van Zandt & Samuel R. Honey*, for the respondents.

NOTE. — POTTER, J., did not sit with the court when this last petition was heard.