STRONG vs. McCAGG, imp.

*October 11 — October 31, 1882.*

CORPORATIONS: DISSOLUTION: EQUITY. *Stockholder cannot maintain action in his own name to dissolve corporation.*

1. Independent of the statute and at common law, a court of equity had no power to dissolve a corporation and sell and divide its property at the suit of an individual stockholder, in his own behalf and in his own name.

2. There is no statute in this state authorizing one of several stockholders to maintain a bill in equity in his own name or in the name of the state, without leave being first granted therefor by this court, to dissolve a corporation and convert its property into money and then divide the same among a portion of the stockholders; and in the absence of such a statute such a suit cannot be maintained.

APPEAL from the Circuit Court for *La Fayette* County.

Action by the plaintiff as one of the stockholders of the Oakland Mining Company against that company and over twenty of its alleged stockholders, including the appellant and James H. Earnest, for the purpose of determining the names of the stockholders, the number of shares owned by each upon the production of the certificates, and for judgment that the corporation had forfeited its corporate rights, privileges, and franchises, and that the same be excluded from such corporate rights, privileges, and franchises, and that the corporation be dissolved; that a receiver be appointed, under whose direction the affairs of the corporation should be wound up, and its property, subject to the rights of lessees and their assigns, be sold and converted into money; that the proceeds, after the payment of costs, expenses, and disbursements of the action and the receiver, be distributed as provided in sec. 3245, R. S. The complaint, among other things, alleged that the capital stock of the corporation was fixed at $3,000,000, and divided into 30,000 shares of $100 each, and that the plaintiff owned 12,480 shares, and the defendant James H. Earnest

4,340 shares, and the remainder of the stock was held by the other defendants. The appellant and several others were served by publication as non-residents of the state, and persons whose residence was unknown. On default being made the cause was referred to Joseph H. Clary, December 10, 1879, who on the same day made his report to the court in writing, among other things, that the only persons who produced before him certificates of stock, or any other evidence that any of the capital stock was held and owned by such person, were the plaintiff and the defendant James H. Earnest, and that the plaintiff owned and held 12,480 shares, and James H. Earnest 4,340 shares. December 16, 1879, the court confirmed the report, and among other things adjudged that the corporation, to wit, the Oakland Mining Company, had, in pursuance of sec. 1763, R. S., surrendered the rights, privileges, and franchises, granted or acquired under any law, and that the same be dissolved; that said corporation had forfeited all its corporate rights, privileges, and franchises, and the same was thereby excluded from such corporate rights, privileges, and franchises, and dissolved, and that the plaintiff recover of the corporation $149.55 for costs and disbursements; that the affairs of the corporation be wound up by and under the direction of the receiver thereby appointed for that purpose; that all the property, real and personal, of said corporation be sold and converted into money; that out of the moneys arising from such sale the receiver was to deduct his fees and expenses, and then pay the plaintiff his costs and disbursements, and then pay to the county clerk such sum as may be required to redeem the lands of the corporation from the sales thereof for taxes, and that after making such payments he divide the surplus moneys, if any, into 16,820 equal parts, and thereupon pay over to the plaintiff, *Moses M. Strong*, 12,480 of such equal parts so divided, and to the defendant James H. Earnest 4,340 of such equal parts so divided, and to make his report of all his transactions as such

receiver, and file it with the clerk of the court; that each and every one of the parties to the action who may be in possession of any of the lands so sold, should deliver such possession to the grantees named in the receiver's deed thereof, subject to the paramount rights of said *Strong* and Earnest, as thereby adjudged; that said corporation, and its successors and assigns, and the other defendants, and their heirs and assigns respectively, be forever barred and foreclosed of all right, title, and interest in said lands, and of all equity of redemption therein. Thereupon the receiver advertised and sold the personal property of the corporation to *Moses M. Strong* for $84.10, and the real estate to said *Strong* for $4,006.55, making in all $4,090.65; that out of said sum he retained $44.60 for his fees and expenses as receiver; paid to the plaintiff $143.06 for his costs and his disbursements, and $1,293.02 to the county clerk to redeem the lands from taxes, and $86.97 to the town treasurer to pay the taxes, making $1,567.65, and leaving a balance in his hands of $2,523, which he divided between said *Strong* and Earnest as follows: to *Moses M. Strong* $1,872, and to James H. Earnest $651; all of which was reported by said receiver to the court, and which report was by the court confirmed March 23, 1880. From the judgment so entered December 16, 1879, the defendant *E. P. McCagg* appealed.

For the appellant there was a brief by *Orton & Osborn*, and oral argument by *Mr. Orton*.

*Moses M. Strong*, respondent, *pro se*.

CASSODAY, J. The question is not whether a court of equity has power to control and regulate the management of corporations, or protect or enforce the rights of stockholders, but whether a stockholder may, in his own name and without first obtaining leave of the court, maintain a bill in equity to dissolve and terminate a corporation, and convert its property into money and divide the same among a por-

tion of its stockholders on the ground of non-user or misuser? It would seem that, independent of the statute, the general equity powers of the court do not extend to such a question. In the absence of a statute conferring jurisdiction upon courts of chancery, the question whether or not a corporation has violated its charter or forfeited its franchise is a question for the sole determination of a court of law. *Society v. Morris Canal Co.*, 1 N. J. Eq., 157; *Att'y Gen. v. Stevens*, id., 369; *President, Managers, etc. v. Trenton City Bridge Co.*, 13 N. J. Ch., 57; *State v. Merchants' Ins. & T. Co.*, 8 Humph., 235; *Hodges v. N. E. Screw Co.*, 3 R. I., 9; *Bayless v. Orne*, 1 Freem. (Miss.), 161; *Comm. v. Union Ins. Co.*, 5 Mass., 232; *Folger v. Columbian Ins. Co.*, 99 Mass., 274.

In *State v. Merchants' Ins. & T. Co.*, supra, the court say: "By the common law the forfeiture of a charter can be enforced in a court of law only, and the proceeding to repeal it is by a *scire facias*, or an information in the nature of a writ of *quo warranto*. A *scire facias* is the proper remedy where there is a legal, existing body capable of acting, but which had been guilty of an abuse of the power intrusted to it. A *quo warranto*, where there is a body corporate *de facto*, which takes upon itself to act as a body corporate, but from some defect in its constitution it cannot legally exercise the power it affects to use. But a court of chancery, unless especially empowered by statute, cannot decree a forfeiture, though it may hold trustees of a corporation accountable for an abuse of trust." Page 252.

In *Comm. v. Union Ins. Co.*, supra, PARSONS, C. J., said: "But an information for the purpose of dissolving the corporation, or of seizing its franchises, cannot be prosecuted but by the authority of the commonwealth, to be exercised by the legislature, or by the attorney or solicitor general, acting under its direction, or *ex officio* in its behalf. For the commonwealth may waive any condition, expressed or im-

plied, on which the corporation was created, and we cannot give judgment for the seizure, by the commonwealth, of the franchises of any corporation, unless the commonwealth be a party in interest to the suit, and thus assenting to the judgment."

In *Folger v. Columbian Ins. Co., supra*, Mr. Justice GRAY took occasion to say: "But general jurisdiction of suits against corporations no more implies a power to destroy a corporation at the suit of an individual, than jurisdiction of private suits against individuals authorizes the court to entertain a prosecution for crime, to pass sentence of death, and to issue a warrant for execution. The only modes of dissolving a corporation known to the common law, were by the death of all its members; by act of the legislature; by a surrender of the charter, accepted by the government; or by forfeiture of the franchise, which could only take effect upon a judgment of a competent tribunal on a proceeding in behalf of the state; and neither a court of law nor a court of equity had jurisdiction to decree a forfeiture of the charter or dissolution of the corporation at the suit of an individual." Such, in effect, is conceded to be the rule at common law by several of the New York courts, notwithstanding, as said by the court in *Bayless v. Orne, supra*, in that state such "power is conferred by express statute." *Slee v. Bloom*, 5 Johns. Ch., 366; *Verplanck v. Mercantile Ins. Co.*, 1 Edw. Ch., 84; *Doyle v. Peerless P. Co.*, 44 Barb., 239; *Gilman v. Green Point Sugar Co.*, 61 Barb., 9. It is true, the decision by Chancellor KENT in *Slee v. Bloom, supra*, was reversed by the court of errors in 19 Johns., 456. That last decision seems to be based upon the theory, to use the language of Chief Justice SPENCER, that "incorporations under the statute differ from corporations, to whom some exclusive or peculiar privileges are granted." He says: "There is nothing of an exclusive nature in the statute (authorizing the association of individuals for manufacturing purposes), but the benefits from

associating and becoming incorporated, for the purposes held out in the act, are offered to all who will conform to its requisitions. There are no franchises or privileges which are not common to the whole community." Page 473. This is the view taken in *Penniman v. Briggs*, 1 Hopk., 303–4; *S. C.*, 8 Cow., 387. The suit of *Slee v. Bloom*, 19· Johns., 456, was by a creditor to charge a stockholder, and went upon the theory that the corporation had been *ipso facto* dissolved.

The court in *Bradt v. Benedict*, 17 N. Y., 99, said: " Whether the court did not, by that decision (19 Johns., 456), rather supply what might be deemed a defect in the statute than to announce the law as it was to be found on the books, it is not necessary to inquire. . . . But, in the language of Chancellor Kent, 'it should not be carried beyond the precise facts upon which the case rested.'" In that opinion it is also conceded that " as a general rule to constitute a dissolution of a corporation, by a surrender of its franchises or by misuser or non-user, *the surrender must be accepted by the government* or the default must be judicially ascertained and declared."

In *Denike v. New York, etc., Co.*, 80 N. Y., 605, the non-user had not existed for a year, but the learned judge giving the opinion of the court, among other things, said: " A corporation owes its life to the sovereign power, and under what circumstances it shall forfeit or be deprived of that life depends upon the same power. . . . All the stockholders uniting might undoubtedly (under 2 R. S., 467) surrender the franchises of a corporation and work a dissolution. But can a portion of them do this in the absence of statutory authority? There is no statute in this state which authorizes a portion of the stockholders to maintain an action to dissolve a manufacturing corporation, and I know of no decision holding that they can." See, also, *The King v. Ogden*, 10 Barn. & C., 230; *The Wallamet*, 5 Sawy., 44.

From the authorities cited we feel warranted in holding

that independent of the statute, and at common law, a court of equity had no power to dissolve a corporation and sell and divide its property at the suit of an individual stockholder, in his own behalf and in his own name. Has the statute authorized such suit to be maintained? Such authority is claimed under sec. 1763, R. S., which reads: "Whenever any corporation shall have remained insolvent, or shall have neglected or refused to pay and discharge its notes or other evidences of debt, or shall have suspended its ordinary and lawful business for one whole year, it shall be deemed to have surrendered the rights, privileges, and franchises granted or acquired under any law, and shall be adjudged to be dissolved." This section was taken from, and is substantially the same as, sec. 20, ch. 148, R. S. 1858, and that in turn was taken from sec. 8, ch. 114, R. S. 1849. The section was originally borrowed from the statutes of New York, where "proceedings by and against corporations and public bodies having certain corporate powers, and by and against officers representing them," were divided up into "proceedings by and against corporations *in courts of law*," to be commenced by summons, *scire facias*, or other process allowed by law, and "proceedings against corporations in equity;" and sec. 38 in question is found in the latter class. A similar division existed in R. S. 1849, ch. 113 being "of proceedings by and against corporations in courts of law," and ch. 114, "of proceedings against corporations in chancery." Sec. 1 of this ch. 114, R. S. 1849, like the corresponding section (31) in New York, gave courts equity power to restrain by injunction, etc., "upon a bill filed under the direction of the attorney general." And sec. 3, ch. 114, R. S. 1849 (sec. 15, ch. 148, R. S. 1858; sec. 3237, R. S.), like the corresponding section (33) in New York, gave courts of equity jurisdiction over directors, managers, trustees, and other officers of corporations. And sec. 5, ch. 114, R. S. 1849 (sec. 17, ch. 148, R. S. 1858; sec. 3239, R. S.), like the corresponding section

(35) in New York, provided that the jurisdiction conferred by the third section shall be exercised as in ordinary cases, on bill or petition, as the case may require, or as the court may direct, at the instance of the attorney general prosecuting in behalf of the state, or at the instance of any creditor, director, trustee, or other officer, etc. And so sec. 6, ch. 114, R. S. 1849 (sec. 18, ch. 148, R. S. 1858; sec. 3216, R. S.), like the corresponding section (36) in New York, provided that " whenever a judgment at law or a decree in chancery shall be obtained against any corporation incorporated under the laws of this state, and an execution issued thereon shall have been returned unsatisfied, in whole or in part, upon the petition of the person obtaining such judgment or decree, or his representatives, the circuit court within the proper county may sequestrate the stock, property, things in action, and effects of such corporation, and may appoint a receiver of the same." So sec. 9, ch. 114, R. S. 1849 (sec. 21, ch. 148, R. S. 1858; sec. 3218, R. S.), like the corresponding section (39) in New York, authorized any court having equity jurisdiction to restrain moneyed corporations and their officers from exercising any of the corporate rights, privileges, or franchises, etc. So sec. 10, ch. 114, R. S. 1849 (sec. 22, ch. 148, R. S. 1858; sec. 3219, R. S.), like the corresponding section (40) in New York, provided that such injunction may be issued on the application of the attorney general in behalf of the state, or of any creditor or *stockholder* upon bill or petition.

In *Ward v. Sea Ins. Co.*, 7 Paige, 298, Chancellor WAL-WORTH said that he saw no reason why sec. 38 was introduced into the article relative to proceedings against corporations *in equity*, unless it was intended to give the court of chancery jurisdiction to declare the corporation dissolved for any of the causes specified in that section. And he also said that, if there was any doubt about the power of the court to proceed under that section, there could be no doubt

as to its proceeding under sec. 39, as the defendant was a moneyed corporation. *Mickles v. Rochester Bank*, 11 Paige, 118, was also against a moneyed corporation. No case has been cited where such suit has been maintained against any other than a moneyed corporation. Mr. Justice EARLE, as late as 1880, in the quotation above given, states that no decision had then been made holding that such suit could be maintained "to dissolve a manufacturing corporation." It would appear, however, that two such suits were decided that same year, although they may have been under somewhat modified statutes. *Medbury v. R. F. S. Co.*, 19 Hun, 498, and *Kittredge v. Kellogg Bridge Co.*, 8 Abb. N. C., 168. The argument is that this sec. 38 of the New York statute was adopted in Wisconsin with the construction which had been put upon it in that state.

The extent to which that construction had then gone, as we have seen, was that such suit could be maintained by a stockholder to wind up the affairs of a moneyed corporation. It may be insisted that the reasons for maintaining the action would apply with equal force to other corporations. The question is not whether there was in the legislative mind any reason for any distinction between moneyed and other corporations, but did the statute make any distinction. The reference already made to secs. 39 and 40 show most clearly that the statute did make special provision for creditors or stockholders maintaining an injunction against moneyed corporations. If equity had jurisdiction to maintain a suit in behalf of a single stockholder against all corporations, then the special provisions as to moneyed corporations would seem to have been meaningless. But in our opinion sec. 38 did not, of itself, undertake to confer any new jurisdiction on courts of equity, nor designate in whose name suits should be brought, nor in any way regulate proceedings in such courts, but merely to define when corporations should " be deemed to have surrendered" their " rights, privileges,

and franchises." The jurisdiction of courts of equity to determine that question was not derived from that section, but from the other sections above referred to, with which it was connected, all under the general caption, "Of Proceedings against Corporations in Equity." The section having been re-adopted in this state in 1849, with its connections and all under the general caption "Of Proceedings against Corporations in Chancery," constituting ch. 114, R. S. 1849, there is much force in the argument that under the construction which it had received in New York prior to its adoption here, and while the statute remained, a stockholder could maintain a bill in equity in his own name to dissolve the corporation; at least, in so far as moneyed corporations were concerned. Assuming that such construction should have been given to ch. 114, R. S., 1849, it is urged with much plausibility that the same construction should continue, notwithstanding the section defining when corporations shall be deemed to have surrendered their rights, privileges and franchises, has, by the revision, been taken out of its connection with the other sections referred to, and is no longer under the caption "Of Proceedings against Corporations in Chancery." But being, as intimated, clearly of the opinion that that section (R. S., sec. 1763) never undertook to give or confer any new jurisdiction on courts, nor designate in whose name suits should be brought, nor in any way regulate proceedings in courts, we must find the authority for maintaining this suit by the plaintiff as a stockholder either in the statute at the time of bringing the suit, or by virtue of the general equity powers of the courts as they existed at common law.

Having already held that, independent of the statute and at common law, a court of equity had no power to dissolve a corporation, and sell and divide its property, at the suit of an individual stockholder, in his own behalf and in his own name, it only remains to be ascertained whether the present

revision of the statute does authorize such a suit to be maintained by a stockholder.    Sec. 3239, R. S., provides that the jurisdiction conferred upon circuit courts over directors, managers, trustees, and other officers of corporations by sec. 3237, R. S., shall be exercised in an action prosecuted by the attorney general in the name of the state, or by any creditor of such corporation, or by any director, trustee, or officer thereof having a general superintendence of its concerns, as the case may require, or as the court may direct. It is very clear that this is not such an action, and that the plaintiff does not sue as one of the persons there named. Sec. 3240, R. S., authorizes the attorney general to bring actions in the name of the state for the purpose of vacating or annulling corporations.    Sec. 3241, R. S., provides that an action may be brought by the attorney general, or *by any private party in the name of the state, on leave granted therefor* by the supreme court *upon cause shown*, for the purpose of vacating the charter or annulling the existence of any corporation in the cases therein designated.    Sec. 3242, R. S., provides, among other things, that in case the attorney general, on application, shall refuse to bring such action, *leave to bring the same by a private party shall be granted only on notice to the attorney general and the proposed defendant.* Sec. 3243, R. S., provides that in case of such application by the attorney general the court may in its discretion direct notice thereof to be given to the officers of the corporation. It is claimed by the learned counsel for the respondent that the case is excepted from the operation of these several sections by sec. 3250, R. S., which provides that "no special directions in these statutes, to the attorney general or any other public officer, concerning corporations, not contained in this chapter, shall be deemed exclusive, nor shall anything *in this* chapter be deemed to repeal *any other remedies given by these statutes* to or against corporations, their officers, stockholders or creditors."

It is true that sec. 1763, R. S., is not contained in this chapter, but another. It is also true that "any other remedies given by *these statutes*" are not to be deemed to be repealed by this chapter. But we are nowhere referred to any other remedy given by these statutes, for, as we have already suggested, sec. 1763, R. S., does not undertake to give a remedy, but merely to define what shall be a surrender or forfeiture. Counsel does not really contend that it does, but insists that the court has the inherent power, independent of the statute, to apply the equitable remedies known to the common law. But we have already determined, upon the authority of many adjudged cases, that no such remedy existed at common law. If we are right in that, then it must follow that the only remedy is such as is given by statute, and manifestly the plaintiff has not pursued any of those remedies. The action is not brought by the attorney general, nor in the name of the state, nor by any private party on leave granted by the court. The question is important, and involves proceedings which may be resorted to for the purpose of taking away the corporate existence of a vast number of corporations. The unauthorized exercise of jurisdiction in such a case might be productive of great mischief. Were it admitted, as claimed by counsel, that the remedies given by statute are not exclusive, but merely accumulative, still the fact would remain that, according to the authorities cited, the plaintiff has chosen a remedy not given to courts of equity by the common law. Besides, it is to be remembered that the power of creating corporations by charter, which in England was an important prerogative of the crown, and latterly practically exercised by parliament, in this country emanates from the legislative department of the government. In this state the right of alteration and repeal of every charter is expressly reserved to the legislature. Emanating from such a source, under such a reservation, it would seem upon principle that they should not be

repealed or annulled by the courts except upon the conditions named and in the manner prescribed by the law-making power. Sec. 1763, R. S., and other sections, have designated the conditions, and the other sections named have prescribed the different modes of procedure. Have courts the inherent power to dispense with the one any more than they have the other? If courts have the reserved equity power to repeal or annul charters, or dissolve corporations, in ways other than those prescribed by the statute, then why may they not do the same for causes not mentioned in the statute? If there is reserved in courts of equity plenary power to proceed in methods not prescribed by the legislature, notwithstanding the statutes, then it is difficult to comprehend the purpose of providing methods which no one was obliged to follow. If it be claimed that the purpose of the statute was to prescribe new methods, then it may well be answered that those prescribed were in harmony with, or substitutes for, those which previously existed, while the one still claimed, but not prescribed, does not seem to have the sanction of courts of equity prior to the statutes. Certainly the prescribing of certain methods cannot be regarded as authorizing other methods not prescribed. We therefore conclude that there is no statute in this state authorizing one of several stockholders to maintain a bill in equity in his own name, or in the name of the state, without leave being first granted therefor by this court, to dissolve a corporation and convert its property into money, and then divide the same among a portion of the stockholders, and in the absence of such a statute such a suit cannot be maintained.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded, with directions to dismiss the complaint.