EVENSON and others, Trustees, etc., Appellants, vs. ELLING-SON and another, Trustees, etc., and others, Respondents.

*September 4 — September 18, 1888.*

CORPORATIONS: RELIGIOUS SOCIETIES. *(1) Abandonment of organization under one law by attempted incorporation under another. (2) Certificate of organization: Acknowledgment. (3) Separate churches in one corporation.*

1. The act of 1847 (p. 85) and ch. 47, R. S. 1849, relating to the incorporation of religious societies, are so essentially different that no corporation could exist under both at the same time; and where a society which had been incorporated under the former act attempted to organize under the latter, and thereafter acted exclusively under such attempted organization, this constituted an abandonment of the previous organization and an effectual surrender of corporate rights and privileges under it,— the enactment of said ch. 47, R. S. 1849, being a sufficient acceptance by the state of such surrender.

[2. Whether the want of an acknowledgment to the certificate of organization is fatal to the validity of an attempted incorporation under the act of 1847, not determined.]

3. In 1844, when two church edifices were erected, there was an organized religious society of the Lutheran Church for each of such churches; and the members of each such church and congregation erected and paid for its own church building and the property appurtenant thereto. No person could be a member of both such organizations at the same time, or have any voice in the management of the internal affairs of the organization of which he was not a member. Each society or congregation held its own burial ground in connection with the church edifice, paid its own expenses, and maintained its own school. All the internal temporal affairs of each society were managed by trustees nominated by its own members exclusively. These were elected at joint meetings of the two societies from 1853 to 1860, and from 1860 to 1885 by each society separately, without the concurrence of the other. The only joint functions of the trustees of the two churches were the care of the parsonage and the land used therewith (owned by the two churches jointly), the employment of a minister for both churches, fixing his salary, and apportioning the same between the two societies. There was no joint meeting of the members of the two societies or

congregations from 1860 to 1885. *Held*, that there were two distinct churches, congregations, or religious societies, which could not lawfully be included in one corporation; and it is immaterial that all the members of both churches or societies believed that they belonged to one congregation, and were incorporated as such.

APPEAL from the Circuit Court for *Dane* County.

This is an action in equity, brought in June, 1886, by the plaintiffs as trustees of "The Norwegian Lutheran Congregation in the Counties of Dane and Jefferson," in this state, against the defendants, who it is alleged claim to be the legal trustees and church-wardens, respectively, of such congregation. The defendants *Ellingson* and *Anderson* are admitted by the plaintiffs to be legal trustees of such congregation, but refused to be plaintiffs. A portion of the property involved in the action, which the plaintiffs claim to hold in trust for the congregation, consists of two church buildings known as the "Eastern Church" and the "Western Church."

The case was before this court at a former term on an appeal by the defendants from an order of the circuit court denying a motion to dissolve a temporary injunction theretofore made herein. 67 Wis. 634. The objects of the action are sufficiently stated in the report of the case on that appeal as follows: "The action is brought to have the plaintiffs, together with the defendants *Ole Ellingson* and *Soren Anderson*, declared to be the sole and lawful board of trustees of the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, State of Wisconsin; to have Ole Vatnebrun and Thore Odegaard declared to be the lawful church-wardens of said corporations for its Eastern and Western churches, respectively; to have the defendants *Subey, Borgerud, Jordalen, Olson* and *Tvedten* enjoined and restrained from acting or attempting to act as trustees of said corporation; to have the defendants *Ole Ellingson* and *Soren Anderson* enjoined and restrained from

acting or attempting to act as such trustees in connection with the other defendants last named, or in any way except in connection with the plaintiffs; to have all of the defendants enjoined and restrained from interfering or intermeddling with the property of the corporation; to have the defendant *Bosben* enjoined and restrained from acting or attempting to act as warden of said corporation for its Western church or otherwise; and to have the defendant *Christen Anderson* enjoined and restrained from acting or attempting to act as warden for the Eastern church, and from holding or keeping possession of said church or its keys or the premises connected therewith, and to have him compelled to deliver up to the said Ole Vatnebrun or the plaintiffs the keys, possession, and control of said Eastern church and premises connected therewith."

That report contains also an abstract of the pleadings, which it is not deemed necessary to insert here, as no question is made upon them. This court reversed the order appealed from, and directed the circuit court to dissolve the temporary injunction. The cause was thereupon remitted to the circuit court, and was afterwards duly tried therein. The trial resulted in a judgment dismissing the complaint.

The findings of fact made by the circuit judge contain a full history of this controversy, and the relations of the respective parties to the church property involved therein, as the same appear by the pleadings and proofs. A report of the case on this appeal which omits those findings would be imperfect and unsatisfactory. Hence, although quite voluminous, they are repeated here. They are as follows:

"The court finds that, in the summer of 1844, one Rev. J. W. C. Dietrichson came to the Norwegian settlement located on Koshkonong prairie, for the purpose of establishing a religious congregation or society there among the Norwegian nationality. That said Koshkonong prairie extended a number of miles east and west and north and south, and

was situated mostly in Dane county, but extended east into Jefferson county some two or three miles.  That from the time the said Dietrichson came to the said settlement as a minister, up to May 29, 1850, when he left the same, with the exception of a short absence in Europe, he kept a church record, and that from said record and other testimony taken upon the trial of this cause, the court finds that the said Dietrichson held his first services as such minister in said settlement on August 30, 1844, at a building on the farm of A. Anderson.  That the next services were held on September 1, 1844, in the eastern part of the settlement, and that there was present a numerous assembly.  That on Monday, September 2, 1844, said Dietrichson held divine services and communion in the western part of the settlement, under an oak tree on the farm of Knud A. Jube.  That at the above services the said Dietrichson was requested by many of the Norwegian settlers to move into the settlement, and that he decided to select this settlement as a starting point for temporary work as a minister of the gospel, because it was at that time the largest Norwegian colony in America, and was situated nearly in the center of the Norwegian settlements in Wisconsin.  That in the month of October following, in pursuance of such request made to him, he came into said settlement and held a meeting at Ammund Anderson's on Thursday, October 10th, in the eastern part of the settlement; and that at said meeting said Dietrichson, after being requested to serve the people of that settlement as a pastor, read to them conditions which he considered necessary to be assented to by each one who would belong, in the language of the record, 'to the congregation,' and that the first named among the conditions, as contained in the record, is the following: 'Do you want to belong to the Norwegian Lutheran Congregation here?'  That at said meeting there were recorded as members of the congregation in the eastern part of the settlement about forty fami-

lies, besides unmarried persons. That, on October 19th following, said Dietrichson proceeded in exactly the same way in the western part of the settlement, where about thirty families, besides some unmarried persons, joined the congregation. That the foregoing was, in the language of the record, 'the origin of the congregation, to which other persons were daily admitted,' and the congregation included both the eastern and western part of the settlement; and that each person, whether he belonged to the eastern or the western part of the settlement, on joining the congregation had the same question put to him, namely: 'Do you want to belong to the Norwegian Lutheran Congregation here?'

"That upon the request of the pastor, the Rev. Dietrichson, he speaking of both parts of the church settlement as one, it was decided to begin the erection of two small houses, which could be consecrated and used as church buildings. That the one in the western part was first completed as a church for the western part of the congregation, and consecrated Thursday, December 19, 1844. That services for the entire congregation were held in this church building until the Eastern church building was ready, to wit, January 21, 1845, when it was also consecrated. That after this divine services were held alternately in both church buildings. That a chorister was elected for the congregation as a whole soon after its formation, and in such election both parts of the settlement are called one congregation. That eight deacons were elected by the entire congregation, four from each district, each of whom was to have his subdistrict to attend to. That on December 8th the congregation, consisting of both parts, held a public meeting in the western settlement, at a private house, and the duties of the deacons were explained to them. That the deacons met, and, there being some disagreement about how the permanent minister was to be elected in the future, a general meeting of the congregation, including both parts, met at the house of one

Vedhuus, in the Eastern district.   That at this meeting the
entire congregation, including both parts, styled itself 'Nor-
wegian Settlers in the Counties of Dane and Jefferson,' and
resolved to organize a Norwegian Lutheran Congregation
with J. W. C. Dietrichson as pastor, and agreed upon the
manner of calling ministers in the future, and agreed to buy
forty acres of land, located as near as possible between the
two church buildings, in the language of the record, 'erected
by the Norwegian Congregation here,' and to build thereon
a house for the pastor.   That this meeting also fixed the sal-
ary of the minister, including contributions to be made ac-
cording to the pleasure of the members of the congregation.
That eight members were appointed to serve three years, to
apportion the salary among the entire membership of the
'Norwegian Lutheran Congregation on Koshkonong Prairie,
Counties of Dane and Jefferson.'   That to these proceed-
ings were attached the signatures of all the heads of fami-
lies and grown-up members of the congregation, including
both parts.   That the members of the congregation then
delivered their ballots for said Dietrichson as permanent
minister, he having been temporarily charged with the reg-
ulation of the church matters before; and that at this meet-
ing an address to him was prepared, informing him that he
was chosen and the reasons therefor, which paper or docu-
ment contains, among others things, the following: 'This
is not mentioned for vain flattery, but it is mentioned as the
apparent reason why we hereby most obediently issue our
call to accept the holy office of minister of this Norwegian
Lutheran Congregation, founded by you here on Koshko-
nong prairie, Dane and Jefferson counties, Wisconsin terri-
tory.'   That this paper was signed by the eight deacons of
the congregation.   That an answer was made to the said
call by the Rev. Dietrichson, accepting the call, conditioned,
however, upon his going to and returning from Norway,
and that this answer was read to the assembled congrega-

tion in both churches. That the said Dietrichson then issued to the Rev. Clausen a temporary call to serve the congregation, meaning the whole, including both parts, during his absence. That the said church record then contains a letter from the Rev. Dietrichson to the Rev. Clausen, and the answer of the Rev. Clausen, which answer, as the record recites, was read to the assembled congregation, both in the Eastern church and in the Western church — meaning the two church buildings.

"That on March 23, 1845, G. O. Vindag was elected church-warden for the Eastern church, and K. A. Jube for the Western church, and a school provided for the congregation, — not congregations. That said church record was kept and continued until July, 1846, by the Rev. Clausen, and was resumed again by the Rev. Dietrichson, who had returned, in which record one congregation is frequently spoken of, and the churches· composing said congregation called the Eastern and Western churches, and the library is called the library of the two churches of the congregation. That each district elected its own deacons, and they and the minister the church-wardens. That on the 21st day of December, 1846, the minister Dietrichson took possession of the building erected for the pastor of the congregation. That there was in connection with the building twenty acres of land, bought of A. Aaratum; but it does not yet appear to whom the title was taken, but the congregation is spoken of in connection with the purchase and improvements.

"That on February 12, 1847, a meeting was held at the house of the minister, consisting of the chorister and seven of the deacons of the congregation; K. A. Jube, from the Western district, not being present. That at that meeting the registry of the members of the congregation, including two parts, was read, and on account of the size of the Western district it was divided into five districts, and the

Eastern district into four districts. That this division was made for the purpose of convenience in making collections for the salary of the minister. That at the same meeting occurred a discussion as to how the deed of the parsonage should be made, and that it was finally concluded to take it to the minister and his successors in office. That, in the same manner, the deed of the land upon which the Eastern church was built was taken; and that at the same meeting it was also determined how wood was to be provided for the minister. That at this joint meeting the deacons were questioned by the minister as to the moral condition of the congregation (in the singular). That it was decided that the Western church district was so large that it should be divided into two school districts. That it was determined to become incorporated under the act of 1847, for the reason, as stated in the language of the record, that, 'inasmuch as the minister as well as the congregation had for a long time been aware of the importance of having the Norwegian Lutheran Congregation organized here incorporated as one body in the United States (because such incorporation can alone secure to the congregation absolute right of ownership of property, according to the laws here), it was with pleasure that they availed themselves of the law enacted by the legislature at Madison in 1847, entitled "An act to provide for the incorporation of the Protestant Episcopal Church and other religious denominations in the territory of Wisconsin." ' And the court finds that notice of a meeting for the purpose of becoming incorporated under said law was given, as required by law, on two Sabbaths in each church building, that such meeting would be held at the Western church building, to which all voting members of the congregation (all male members of age) were invited. That said meeting was held. That three trustees were elected, and that all the proceedings were had necessary to incorporate under the said law, except that the

certificate required was not acknowledged. That the name or title given to the trustees was 'Trustees of the Norwegian Lutheran Church on Koshkonong Prairie, Dane and Jefferson Counties, Wisconsin Territory;' and that it was by this name that the said congregation was to be known forever, and to be considered, in the language of the record, 'a united civil body or society, and body corporate and politic.'

"That from 1847 to 1850 the said congregation, comprising both districts, each year elected three trustees under said organization of 1847.

"That in the new church year of 1847 eight deacons were elected at each church; and that, after the services, they were instructed as to their duties. That a singing-school was organized in each district. That on June 1, 1848, new trustees were elected at the close of the services, indicating that it was supposed that the congregation was a corporation under the law of 1847 and acting as one body.

"That in an attempt to effect an organization of all the Norwegian Lutheran Churches in the country, in 1849, each church of this congregation sent delegates to a meeting for the purpose named. That on August 21, 1849, a meeting was held at the parsonage, consisting not only of the deacons and trustees but of all the voting members of the congregation. That the Rev. Dietrichson informed the meeting that he should not continue as minister of the congregation any longer than until that time next year. That some further proceedings were had during that year, in which it was resolved that the name of the congregation should then be 'The Norwegian Lutheran Church on Koshkonong Prairie;' and that on the 28th of May, 1850, the services, as pastor, of the Rev. Dietrichson closed, and those of the Rev. Preus commenced.

"That soon after the above date the latter pastor submitted certain propositions, and the following entry appears: 'The answer has been adopted by the congregation, deacons,

Evenson and others vs. Ellingson and others.

and trustees, and read publicly in both congregations.' That here, for the first time, each separate church or part is spoken of as a congregation, but at the same time spoken of as a whole.

"That the old condition of things, as hereinbefore shown and found, continued during the administration of the Rev. Preus. That there was no change in the name of the congregation, or in any of its modes of conducting its business or church affairs, until May 19, 1853, when by the most solemn and deliberate act — that of applying for a charter — it was shown that what is so often termed the congregation, and both parts, regarded that congregation as one body, and, as such, went through all the formal requisites of organizing as one body, to be known as 'The Norwegian Lutheran Congregation in the Counties of Dane and Jefferson,' using the same name as the congregation had always used excepting the dropping out of the words 'on Koshkonong Prairie;' and the court finds that the congregation as a whole included both the churches and territory in both Dane and Jefferson counties.

"And the court finds that it is not true, as alleged in the answer herein, that the congregation attending at the Eastern church was ever called the 'Norwegian Lutheran Congregation in the Counties of Dane and Jefferson,' but that that term, when used, applied to the entire district called the 'Eastern and Western churches.' That it is not true, as alleged in the answer herein, that the people who attended at the two churches considered themselves to belong, or that they have belonged, to two separate congregations or societies, but that they have regarded themselves as belonging to one congregation with two churches, and the court finds that residence generally fixed the church to which a certain person or individual belonged, and that such church was the one most convenient for the members of the congregation to attend.

" The court further finds that it is not true, as alleged in the answer herein, that the different churches have always had their separate and distinct boards of trustees. That frequently the members of the entire congregation met in one body and voted together, but that both parts have always been known by the one name heretofore so often mentioned. And the court further finds that Exhibit A, so often referred to in the answer herein, did not alone refer to those who attended church at the Eastern meeting-house, but to those who attended at the Western house also. That the organization to be had as referred to therein meant the organization of both into one congregation, to be known as the Norwegian Lutheran Congregation in the Counties of Dane and Jefferson, as hereinbefore and hereinafter shown.

" That with a view of organizing in 1853, trustees were elected as follows: Notice was given in each church that they would be elected in the East church, and that six were nominated in the Western, and that three were nominated in the Eastern church, and that thereafter a meeting of the congregation was held, including those who attended at both churches, and that said meeting was held pursuant to said notice, and that at said meeting the trustees were elected, consisting of nine members, three from the Eastern and six from the Western church. That, from that time to the time of the controversy resulting in this action, the board of trustees consisted, when full, of nine members, six for the Western and three for the Eastern district. That just how the trustees were elected after the first election in 1853 up to 1860 does not, perhaps, always appear; but as this was the mode of electing the first board of trustees, and as it appears that the board, when full, consisted of six members for the Western district and three for the Eastern district, the court finds that it is not to be presumed that a change was made until it appears.

" That in 1860 the services of the Rev. Mr. Preus as pastor

of the congregation closed, and on the 30th day of May, 1860, one J. A. Otteson, having been duly called by the said congregation as its pastor, under a written call expressing the terms and conditions thereof, he, having accepted the said call, became and was from that time up to the commencement of this action the regular pastor of the congregation, serving both the Eastern and the Western churches. That, about the time the Rev. Otteson commenced his services as pastor of the congregation, the members of the congregation who attended religious services at the Western church commenced to hold separate meetings at the Western church building for the purpose of electing trustees separately, and those members of the congregation who attended religious services at the Eastern church commenced also to hold separate meetings at the said Eastern church building for the purpose of electing trustees separately; and since the last-mentioned date, namely, May 30, 1860, up to the 17th day of December, 1885, no meeting of the whole congregation was ever called, but the meetings of the members of said Eastern and Western churches were held from time to time, separately, for the purpose of electing trustees as above stated, each church electing its trustees separately. That at such elections so held the members of the congregation or society who usually attended religious services at the Western church were not allowed to vote and did not vote at such elections of trustees for the Eastern church, and that those members who usually attended religious services at the Eastern church were not allowed to vote and did not vote at such elections of trustees for the Western church; and that the said trustees so elected acted in the capacity as trustees for the entire congregation, but the trustees elected by the members of the Eastern church acted separately from those elected by the members of the Western church. But the court finds that never at any time did the members of said

Eastern or Western churches, when so separately assembled in any meeting as aforesaid, claim or pretend to be or compose the whole congregation of said Norwegian Lutheran Congregation in Dane and Jefferson Counties, nor did either body of the trustees so elected by the members of either of said churches ever claim or pretend to represent or act for the whole congregation; except that, after certain dissensions arose, and the members of said congregation became divided upon certain religious questions, and the members of said congregation became divided into factions upon said questions, the majority of the members of said congregation who attended meetings at the Western church taking one side, and a majority of the members attending services at the Eastern church taking the other side of said controversy, the members of said Eastern church conceived the idea that it was necessary to hold a meeting of all of said trustees so elected by the members of both of said churches, for the purpose of obtaining control of the congregation as a whole. That the four trustees belonging to the said faction, three of whom were elected by the members attending the East church and one by the members attending the West church, did, on the 14th day of August, 1885, call a joint meeting of all the trustees, those elected by the East and those elected by the West church. That such meeting was held pursuant to said notice. That at said meeting a majority of said trustees, consisting of the four belonging to the Eastern faction, pretended to act as trustees for the entire congregation.

" The court further finds that two of the defendants, *Ole Ellingson* and *Soren E. Anderson*, are two of the three trustees elected by the society worshiping at the Eastern church, and were elected solely by the members of that society. That said church building was erected and paid for by the members of that church. That that society had its own burial grounds in connection with said church.

That it had maintained its own school. That it had contributed its share to buying grounds for and building a parsonage, and for the payment of the minister, and that the business affairs pertaining to these subjects had been managed since 1860 exclusively by the three trustees elected for the Eastern church and the members of said church. The court further finds that the plaintiffs *Erik Evenson*, *Edwin Drotning*, *Halvor Johnson*, and one Lars G. Vick, whose term of office expired on the 2d day of March, 1886, are four of the trustees elected by the society worshiping at the Western church, and that they were elected solely by the members of that society. That said church building was erected and paid for by the members of that church. That that society had its own burial-grounds in connection with said church. That it maintained its own school. That it had contributed its share to buying grounds for and building and maintaining a parsonage, and for the payment of the minister, and that the business affairs pertaining to all these subjects had been managed since 1860 exclusively by the three trustees elected for the Eastern church and the members of said church. The court further finds that all the members of both churches well understood to which church they belonged, and that they could not in fact belong to both, and that if they changed from one to the other they must withdraw from the one and join the other.

"The court further finds that both parties to this controversy supposed at the time of its commencement, and up to that time and since the attempted organization in 1853 as one corporation, and even since 1847, that they constituted one body or corporation. The court further finds that on December 17, 1885, there was held at the Western church of the congregation a meeting of the whole congregation, which meeting was duly called pursuant to notice given by the pastor, Rev. J. A. Otteson, and was called by him as such

pastor, and that said notice was read aloud by said pastor at least once at a meeting of each of said churches prior to the said 17th day of December, 1885. That said meeting was a very full meeting of the members of the entire congregation, over 300 members thereof being present and taking part as such members in such meeting. That at said meeting a resolution was adopted to the effect that notice be given that a meeting of the congregation would be held on the first Thursday of February next thereafter, for the purpose of preparing and adopting a constitution and by-laws for the congregation, and for the election of two trustees to fill vacancies, and for such other business as might come before the congregation. That notice of said meeting was read aloud at least twice at meetings of each of said churches prior to the first Thursday of February next thereafter, so that notice of said meeting was duly given as required, and said meeting was held at the time appointed at the Western church building. That said meeting was duly called to order and organized, and a record made of all its proceedings. That it was attended by the faction belonging to the plaintiffs, and that the faction belonging to the defendants withdrew from the same and took no part in the same. That at said meeting the plaintiffs' faction, including those who worshiped at both the Eastern and the Western churches, elected or pretended to elect, as trustees for the entire congregation, *Hellick Tostenson*, to serve as such trustee until the annual meeting of the congregation for 1886, and *Tolleff Rinden*, to fill vacancy for the term expiring at the annual meeting of the congregation for the year 1888. That at this meeting a constitution and by-laws for the congregation were adopted in the Norwegian language, and that a correct copy or translation of the same is found in Exhibit A, attached to the complaint. That at said meeting said faction elected or pretended to elect Ole

F. Gulseth as president of the congregation, P. N. Johnson as vice-president, and Ole A. Holton as secretary, and Halvor Eggleson as treasurer.

" That in and by the said constitution and by-laws, found in Exhibit A, it is provided that the annual meeting of the congregation shall be held on the first Tuesday of March of each year, at 10 o'clock in the forenoon of that day. That this was the time at which the Western church had for a long time prior thereto held its annual meeting. That, in pursuance of this provision in the said constitution and by-laws, the faction consisting of the plaintiffs, made up of persons belonging to both the Eastern and the Western church, met for its annual meeting at the Western church on the first Tuesday of March, 1886. That said meeting was duly organized according to the terms of the said constitution and by-laws. That at said meeting said faction elected or pretended to elect as trustees of the entire congregation, to hold for the term of three years, the following named persons, *Hellick Tostenson*, *Elev P. Aolia*, and *Ole Fliseram*, and that they are three of the plaintiffs in this action. That the members consisting of said faction at said meeting elected pursuant to said constitution and by-laws two church-wardens, to wit, Thore Odegaard, to be church-warden of the Western church and for the Western district, and Ole Vatnebrun, to be church-warden for the Eastern church, to hold their offices, and perform their respective duties as such church-wardens, until their term of office should be terminated. That the duties of said church-wardens, according to said constitution and by-laws, are to hold the keys of their respective churches, and open and close the same; to attend to the heating and ventilation and ringing of bells of said churches, and attend to the digging of graves; that they also have certain duties in relation to communion services in their respective churches. That at said meeting a resolution was adopted to the effect

that all business transacted and all resolutions adopted at the two previous meetings, to wit, at the one held December 17, 1885, and the one held February 4, 1886, were in all things ratified and confirmed. That at said meeting held December 17, 1885, a resolution was passed by the congregation to the effect that, pending the remainder of the term of office of the Rev. J. A. Otteson as pastor of the congregation (which office of pastor was to terminate, according to notice given him, on December 18, 1886), the use of the said Western and Eastern churches should be granted to such members of the congregation as did not desire to attend upon church services conducted by said Pastor Otteson, for public religious services, to be held, however, at such time or times in each of said churches as should not in any way conflict with religious services to be held in either of said churches by said Pastor Otteson. That said Otteson held services as pastor of said congregation in said Eastern and Western churches, and also in a church at Deerfield, Wisconsin, so that he held services in each of said churches generally once in three weeks, and that on the other two Sundays intervening no services are held at either of said churches by said Pastor Otteson.

"That, after the said dissension or religious controversy had arisen in the said congregation, a faction of said society, being a majority of the members attending services at the Eastern church and a minority of the members attending religious services in said Western church, headed by the Rev. J. A. Otteson, attempted to gain control of the whole congregation. That for that purpose they caused a notice of the said meeting of trustees hereinbefore mentioned to be held on the 22d day of August, 1885, to be given, and they also caused the said meeting to be held; and that, with the same object in view, the said faction also caused the said notice for said meeting of the entire congregation, held on the 17th day of December, 1885, to be given. That at said

meeting held December 17, 1885, said faction found itself to be in the minority. That then and thereafter said faction commenced to claim that a valid custom had arisen in the congregation, by virtue of which it was and is lawful to hold separate meetings of the congregation, as hereinbefore found, and they claimed that such meetings were binding on the whole congregation. That said faction from that time commenced to set up the claim that the said faction comprised the only lawful members of the congregation, and that said Otteson asserted that no members of said congregation outside of his faction were his people; and said faction claimed that persons not supporting said faction were not members of said congregation, and had no right to take part in its meetings. That in pursuance of their said claim the said faction has elected certain trustees, who are defendants herein, namely, *John Subey*, *Ole O. Borgerud*, *L. C. Jordalen*, *Ole C. Olson*, and *Torger B. Tvedten*. That they have also elected two church-wardens for the congregation, namely, one *Christen Anderson*, one of the defendants, to be church-warden for the Eastern church, and *Hans A. Bosben*, one of the defendants, to be church-warden for said Western church, with the duties pertaining to said offices as above found. That the said trustees, together with *Ole Ellingsen* and *Soren Anderson*, claim that they are the only lawfully elected board of trustees of the congregation, and claim the right to control its property and affairs, and claim the right to exclusive possession and control of said churches. That the said *Ole Ellingson*, in his capacity as such trustee, did, on the 8th day of March, 1886, remove the locks from the doors of said Eastern church, and took forcible possession of the same, and put on new locks, and delivered the keys thereof to said *Christen Anderson*, as church-warden of said Eastern church; and that he and the other said trustees held the said Eastern church at the commencement of this action, to the ex-

clusion of all other persons, and particularly to the exclusion of the church-warden Ole Vatnebrun; and that he and they on three Sundays, to wit, on the 25th day of April, the 9th day of May, and the 30th day of May, 1886, prevented the faction to which the plaintiffs belong from worshiping in said church according to the resolution passed at the meeting held December 17, 1885, and prevented said faction to which the plaintiffs belong from entering said church or conducting or taking part in any services therein held, except services held by the said Otteson or some one designated by him. That the said church-warden and the trustees above named also took forcible possession of the church-yard of the said Eastern church. That the said *Hans A. Bosben*, so claimed to have been elected church-warden for the Western church by the faction to which the defendants belong, in pursuance of directions from the trustees of that faction, claims the right to enter the said Western church at will and usurp the duties of the lawful warden of that church, the said Thore Odegaard. That he rang the bell of that church, and assumed that he had the right to do so at any time. That he entered the church-yard connected with the said church and assumed to exercise the right of digging graves therein upon funeral occasions, and that, in digging the same, he did not dig them the proper depth. That in an arbitrary manner he interfered and intermeddled with the articles used in communion services in said church, and in an arbitrary manner attempted to exercise the right to enter the said church, and to control the same, to the annoyance of the members worshiping at that church and belonging to the plaintiffs' faction, and to the exclusion of the lawful church-warden, the said Thore Odegaard.

"The court further finds that on the 1st day of May, 1886, a meeting of the trustees composed of the plaintiffs' faction was held, and that all the plaintiffs were present excepting *Halvor Johnson;* and that notice of said meet-

ing was given to the defendants *Ole Ellingson* and *Soren Anderson*, but that they refused to attend. That at said meeting the following resolutions were adopted by said board: 'Resolved that this board of trustees employ counsel to institute such suit or suits as shall be necessary to vindicate and enforce their rights as such trustees to the full possession and control of all the property of the corporation known as the "Norwegian Lutheran Evangelical Congregation of Dane and Jefferson Counties, State of Wisconsin;"' and also the following resolution: 'Whereas, the Eastern church belonging to this congregation has been taken possession of without authority of law, and withheld from the use and control of the congregation and its trustees, therefore, resolved, that the chairman of this board be and is hereby authorized to demand the keys and control of said church from the persons having possession of the same, and that he put the same into the possession of the congregation and its lawful trustees.' That at said meeting a resolution was also adopted requiring the enforcement by the said Odegaard, the said warden of the Western church, of the resolution of the said trustees, adopted on the 6th day of March, 1886, to the effect that said Odegaard should not permit any other person to act in his place as such warden. That in pursuance of said second resolution above given the said *Erick Evenson*, chairman of the said trustees, on the 4th day of May, 1886, demanded of the defendant *Christen Anderson*, who claimed to act as, and to be, the church-warden for the Eastern church, as aforesaid, that he deliver and give up to the said *Evenson* the keys, possession, and control of the Eastern church to him for said board of trustees. That the said *Anderson* then and there had possession of said keys and control of said Eastern church. That the said *Anderson* refused to give up the said keys, and refused to give possession or control of said church to said *Evenson* or said board of trustees. That the

defendants upheld the said *Christen Anderson* in such re-
fusal, and instructed him to keep the possession of said
keys and of said church.

"That the said *Ole Ellingson* and *Soren Anderson* were
not made plaintiffs in this action for the reason that they
adhere to and support the faction led by Pastor Otteson,
and act with the defendants *Subey, Borgerud, Jordalen,
Olson,* and *Tvedten,* and refuse to attend meetings of the
plaintiffs, though notified of such. That on the 27th day
of May, 1886, the said *Ellingson* and *Anderson* were noti-
fied and requested to join in this action as plaintiffs with
the said plaintiffs by *Erick Evenson* and Ole E. Gulseth.
That they refused so to do."

The conclusions of law are as follows:

"The court finds as conclusions of law that the corpora-
tion which the plaintiffs claim in their complaint existed,
and of which they claim to be a majority of trustees, had
no existence in fact. That the attempted incorporation
thereof in 1853 was null and void under the statute, for the
reason that two churches as distinct in character as were
these in question could not organize into one corporation
under the statute under which they claim to exist; and that
the organization in 1847 was void because the certificate was
not acknowledged. That the said election of trustees under
said organization of 1847 to 1851 did not operate to cure the
said defective organization. That if said attempted incor-
poration had been valid, it would be unjust and inequitable
to restrain by injunction the Eastern church from the
church building and property connected therewith, which
that church had built and maintained wholly at its own ex-
pense, said injunction being against the wishes of two of
the three trustees elected by said Eastern church, who, with
their predecessors, had managed its business affairs wholly
since 1860, by common consent of both churches. That
the plaintiffs are not entitled to the relief demanded in the

complaint, or any portion thereof, and that it should be dismissed. That the defendants recover of the plaintiffs personally the costs and disbursements of this action."

From the judgment dismissing the complaint the plaintiffs appeal.

For the appellants there were briefs by *Pinney & Sanborn* and *John M. Olin,* and oral argument by *S. U. Pinney* and *Mr. Olin.*

For the respondents there was a brief signed by *Ollis & Helms,* and the cause was argued orally by *I. C. Sloan.*

LYON, J. The findings of fact are certainly fully as favorable to the plaintiffs as the testimony will allow. For the purposes of this appeal it will be assumed that they are supported by the proofs. Hence the general question to be determined is, Do such findings sustain the conclusions of law which the circuit court deduced therefrom? These conclusions are: (1) The attempted incorporation of the congregation in 1847 is void, because the certificate thereof was not acknowledged as required by the act of that year, under which the organization was attempted. Laws of 1847, p. 85. (2) The organization of 1853 is also void, because it attempted to unite in one corporation two distinct churches, congregations, or religious societies. (3) If there was a valid corporation, still, under the circumstances of the case, it would be unjust and inequitable to restrain the Eastern church by injunction from the control of the church building and the property connected therewith.

1. Whether there was or was not a valid corporation created by the proceedings in 1847 is, we think, a question of no importance in the case, for the reason that, if such corporation was then created, it ceased to exist in 1853 by the action of the corporators, apparently unanimous, in that year. A corporation may be dissolved by a surrender of the charter, accepted by the government. *Strong v. McCagg,*

55 Wis. 624, and cases there cited.   In 1853 the corporators abandoned their organization under the act of 1847, and sought to organize, and in form did organize, under R. S. 1849, ch. 47.   These two laws were so essentially different that an organization of the same society under both could not exist at the same time.   Under the act of 1847 only male persons of full age belonging to the congregation were allowed to participate in the organization of the corporation, while under the act of 1849 all persons of full age belonging thereto could so participate, with the restriction (not contained in the act of 1847) that no person shall vote at any corporate election after the first unless such person shall have been an attendant on public worship in such church, congregation, or society at least six months before the election, and shall have contributed to the support thereof according to its usages and customs.   Again, the act of 1847 conferred upon corporations organized under it the power to sell their real estate, while the law of 1849 required application for license to sell such property to be first made to the circuit court.   Under the act of 1847 the corporation was authorized to fix the term of its trustees. The act of 1849 fixes such terms, and classifies the trustees. The act of 1847 does not provide for elections to fill vacancies in the board of trustees.   The statute of 1849 does so provide, and prescribes the notice which shall be given of such elections.   These and other differences between the two acts show that no corporation could exist under both acts at one and the same time.

From and after 1853 the congregation acted under the organization of that year exclusively.   The abandonment of the organization of 1847 is an effectual surrender of corporate rights and privileges under it; and the enactment of ch. 47, R. S. 1849, under which the last organization was made, is a sufficient acceptance by the state of such surrender.   It would be singular indeed, if corporate rights

could now be predicated of an organization which had been abandoned by the unanimous action of all the corporators for more than thirty years.   Hence, without determining whether the want of an acknowledgment to the certificate of organization is fatal to the validity of the incorporation (as the circuit court held), we conclude that the incorporation or attempted incorporation of the congregation in 1847 is of no significance in the case.

The proceedings of 1847 were first suggested on the trial of the action, and were introduced into the case at that time by an amendment to the complaint and the introduction of testimony under it.

2.  When this case was here on the former appeal it was held that two distinct churches, congregations, or religious societies could not be organized into one corporation under ch. 47, R. S. 1849, or any law of this state; and could not become a corporation *de facto* by user or otherwise.   We are still of the same opinion.   The question arises, therefore, Do the proofs establish the existence of two such distinct churches, congregations, or religious societies? or, rather, Do the facts found show that the Eastern church and the Western church are such distinct institutions that they cannot, under the rule established on the former appeal (67 Wis. 634), be included in one corporation?   The circuit court resolved these questions in the affirmative.

The findings are to the effect that from 1844 (in which year the two church edifices were erected) there was an organized religious society of the Lutheran Church for each of such churches; and the members of each such church and congregation erected and paid for its own church building and the property used therewith and appurtenant thereto. No person could be a member of both such organizations at the same time, or have any voice in the management of the internal affairs of the organization of which he was not a

member.   Each society or congregation held its own burial ground in connection with the church edifice, paid its own expenses, and maintained its own school.   All the internal temporal business affairs of each society were managed by trustees nominated by its own members exclusively.   These were elected at joint meetings of the two societies from 1853 to 1860, and from 1860 to 1885 such trustees were elected by the society itself, without the concurrence of the other society.   The only joint functions of the trustees of the two churches were the care of the parsonage and the land used therewith, the employment of a minister for both churches and fixing his salary, and probably the apportionment of such salary between the two societies.   Such joint action was necessary, because the two churches owned the parsonage property jointly, and desired to be served by the same minister.   There was no joint meeting of the members of the two societies or congregations, after 1860, until this controversy arose in 1885.

The former appeal herein was from an order refusing to dissolve a preliminary injunction theretofore made in the cause, and it was heard upon the pleadings and certain affidavits.   We held on that appeal that the facts then before us showed the existence of two distinct churches, congregations, or religious societies, which could not lawfully be included in one corporation.   A perusal of the opinion by Mr. Justice ORTON on that appeal will show that the facts there held to be established by the pleadings and affidavits, and those found by the court upon the trial of the cause, are not so materially different as to justify a finding here that the Eastern and Western churches, congregations, or societies were not distinct organizations, and thus not within the rule there laid down.

It is not material that all of the members of both churches or societies believed that they belonged to one congregation,

and were incorporated as such.   That opinion of the corporators cannot alter the real facts in the case, nor change the rule of law applicable thereto.

We conclude, therefore (as we did upon the former appeal), that the organization of 1853 is not a valid incorporation, and, because it is not, the plaintiffs have no jurisdiction or control over the Eastern church as trustees or otherwise. The object of this action being to establish such jurisdiction, the complaint was properly dismissed on the merits.

3. The conclusions already reached render it unnecessary to pass upon the hypothetical conclusion of law to the effect that if a valid corporation existed which includes both churches, and of which the plaintiffs are the lawful trustees, still it would be unjust and inequitable to restrain the Eastern church from the use and control of its church building and the property connected therewith.   We leave that proposition undetermined.

Our judgment herein affects only the temporalities of these two societies or congregations.   It does not involve any consideration of the difference in doctrine which has led to the litigation.

The controversy between these two churches is greatly to be deplored.   It must necessarily detract from their usefulness, and seriously interfere with the peace of mind of the members thereof and the brotherly feeling which they ought, and no doubt desire, to exercise towards each other. The quarrel should be adjusted on some basis just to both sides, and this litigation stopped.   The writer of this opinion, on his own responsibility, ventures the suggestion that each church, congregation, or society should take steps to become incorporated under the statutes, and, when such incorporations are formed, that they should agree upon a just division of the parsonage and other property of which they are equitably the joint owners.   My present recollection is that one of the affidavits used on the hearing of the motion

to dissolve the preliminary injunction states that the Western church at one time proposed some such course of action to the Eastern church, but the latter church did not accept the proposition. This proposition was in the interests of peace, and should have been accepted. Had it been accepted this litigation, with its heavy expense and the animosities which it necessarily has engendered in the breasts of good men against each other, would have been avoided. It is hoped that some such proposition will be renewed and accepted, and all litigation between those churches speedily terminated.

*By the Court.*— The judgment of the circuit court is affirmed.